714 A.2d 856

ATTORNEY GRIEVANCE COMMISSION

v.

**William OBER.**

**Misc. No. AG 32, Sept. Term, 1997.**

Court of Appeals of Maryland.

Aug. 5, 1998.

Melvin Hirshman, Bar Counsel, and Raymond A. Hein, Asst. Bar Counsel, for Attorney Grievance Com'n of Maryland.

Charles J. Balint, Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

CHASANOW, Judge.

At the direction of the Review Board, the Attorney Grievance Commission of Maryland (Petitioner) through Bar Counsel filed a petition for disciplinary action against William Ober (Respondent) pursuant to Maryland Rule 16–709. In the petition, it is alleged that Respondent engaged in misconduct, as defined in Maryland Rule BV1k, now Md. Rule 16–701k. We ordered that this matter be transmitted to Judge Lawrence R. Daniels of the Circuit Court for Baltimore County for a hearing.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After a hearing on the merits, Judge Daniels made the following findings of fact:

"1.   The Respondent, William Ober, was admitted to the Maryland Bar on December 21, 1977.

### A.   *Complaint of Anthony Raymond, Jr.*

2.   The Respondent had a social relationship with Anthony Raymond, Jr., dating back to the mid–1980's.   The Respondent and Mr. Raymond regularly played backgammon and frequently gambled on the outcome of their games.

3.   Over the years of their social relationship, the Respondent also represented Mr. Raymond at various times in several legal matters.   One such matter was a Pennsylvania bankruptcy proceeding in which Mr. Raymond had a claim as a creditor against the bankruptcy petitioners, Seymour and Wendy Kilstein.   The Respondent's representation of Mr. Raymond in the Kilstein bankruptcy matter commenced in 1990 and was ongoing throughout 1992 and 1993.

4.   The Respondent received no fee for his representation of Mr. Raymond in the Kilstein case.

5.   On August 24, 1992, the Respondent accepted a no-interest loan of $1,800.00 from Mr. Raymond, as evidenced by Petitioner's Exhibit No. 8.   The Respondent did not advise Mr. Raymond to seek advice of independent counsel in connection with this transaction.   The Respondent was unable to produce any documentation or other evidence that he repaid this loan to Mr. Raymond, who maintains that the loan was not repaid.

6.   Respondent provided competent representation to Mr. Raymond in the Kilstein case.

7.   On or about December 23, 1993, the Respondent received a check in the amount of $8,673.35, made payable to the Respondent, from the Kilstein bankruptcy trustee. That check was issued in partial settlement of Mr. Raymond's creditor's claim and constituted client funds received by the Respondent on behalf of Mr. Raymond.   On December 23, 1993, the Respondent deposited the bankruptcy

trustee's check into his attorney escrow account at Mercantile Safe Deposit and Trust Company.

8. On December 31, 1993, the Respondent issued Check No. 1247 from his escrow account, payable to Mr. Raymond in the amount of $2,000.00 as a partial distribution of the Kilstein bankruptcy settlement proceeds the Respondent had received. Mr. Raymond negotiated the escrow check, which cleared the Respondent's account on January 4, 1994.

9. On December 31, 1993, the Respondent also issued Check No. 1246 from his escrow account, payable to himself, in the amount of $1,500.00. The Respondent negotiated that check for cash on the same date. The Respondent maintains he gave Mr. Raymond $500.00 in cash on December 31, 1993, along with Check No. 1247 for $2,000.00. Mr. Raymond acknowledged receipt of Check No. 1247, plus $500.00 in cash, when he signed a written distribution sheet (in evidence as Petitioner's Exhibit No. 9) on January 21, 1994.

10. With respect to the balance of the Kilstein bankruptcy funds the Respondent was holding, the Respondent maintains he entered into an agreement with Mr. Raymond whereby Mr. Raymond agreed to lend the balance, in the amount of $6,173.35, to the Respondent for the purpose of allowing the Respondent to use the money to gamble on backgammon. In addition to the $1,000.00 he received from cashing Check No. 1246, the Respondent withdrew the remaining trust funds from his escrow account by writing the following checks payable to himself:

| | | |
|---|---|---|
| a. | Check No. 1248 (dated Jan. 5, 1994) | $2,000.00 |
| b. | Check No. 1249 (dated Jan. 7, 1994) | $2,300.00 |
| c. | Check No. 1250 (dated Jan. 13, 1994) | $ 500.00 |
| d. | Check No. 1251 (dated Jan. 14, 1994) | $ 400.00 |
| | | $5,200.00 |

11. The Respondent removed $6,200.00, including $6,173.35 in client funds received by the Respondent on behalf of Mr. Raymond, from his escrow account over a two-week period from December 31, 1993 to January 14, 1994. The Respondent used those funds to gamble on backgammon with Mr. Raymond.

12. On January 21, 1994, Mr. Raymond signed the distribution sheet (Petitioner's Exhibit No. 9) indicating that there had been an agreement to lend $6,173.35 to the Respondent 'for the period of three weeks for his personal use' and that the Respondent had Mr. Raymond's 'full permission and consent to withdraw the sum of $6,173.35, ... , from his escrow account for his personal use.' Mr. Raymond acknowledged receipt of two personal checks from the Respondent on January 21, 1994, repaying the principal of the loan, plus $28.40 in interest.

13. The Respondent did not advise Mr. Raymond to seek the advice of independent counsel in connection with the loan of the Kilstein bankruptcy settlement funds.

14. Mr. Raymond, who has an undergraduate degree in business, as well as a master's degree, is a person savvy in business matters.

15. Had Respondent advised Mr. Raymond to seek the advice of independent counsel concerning the loan, Mr. Raymond would not have sought such advice.

16. In response to Bar Counsel's investigation of Mr. Raymond's complaint, the Respondent was unable to produce any escrow account records related to his receipt and disbursement of Mr. Raymond's client funds received in December, 1993 from the Kilstein bankruptcy trustee. At an Inquiry Panel hearing on October 9, 1996, for which a subpoena was issued to Respondent to produce such records, the Respondent admitted that he did not have any records relating to the Kilstein bankruptcy funds deposited into his escrow account.[1]

17. Respondent and Mr. Raymond have not played backgammon for money with each other since the events giving rise to the instant complaint, or shortly thereafter."

---

1. Bank records for Respondent's escrow account were reproduced by Mercantile Safe Deposit and Trust Company and admitted by the court as a joint exhibit.

.

Judge Daniels concluded that Respondent violated Maryland Lawyers' Rule of Professional Conduct 1.8(a)[2] by "entering into financial transactions with Mr. Raymond without advising him to seek the advice of independent counsel." Judge Daniels also concluded that Respondent violated former Maryland Rule BU9[3] by "borrowing client funds required to be deposited in an attorney trust account." Judge Daniels further concluded that, by "failing to preserve complete trust account records related to his receipt of client funds on behalf of Mr. Raymond for a period of five years after termination of the representation," Respondent violated Rule of Professional Conduct 1.15(a) which provides:

> "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to [Subtitle BU] of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation."

---

**2.** Maryland Lawyers' Rule of Professional Conduct 1.8(a) provides:
"A lawyer shall not enter into a business, financial or property transaction with a client unless:
(1) the transaction is fair and equitable to the client; and
(2) the client is advised to seek the advice of independent counsel in the transaction and is given a reasonable opportunity to do so."
Unless otherwise indicated, we will refer to the current Maryland Lawyers' Rules of Professional Conduct since the rules at issue have not changed substantively from those in effect at the time of Respondent's conduct.

**3.** Maryland Rule BU9 was renumbered as Md. Rule 16–609, effective January 1, 1997, but no substantive changes were made. Maryland BU9 provided:
"An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer."

With regard to the second complaint against Respondent, Judge Daniels made the following findings of fact:

### "B. *Complaint of Carolyn Grooms*

18. In 1986, the Respondent began representing Carolyn Grooms in a workers' compensation case arising from an accidental injury Ms. Grooms sustained at work on December 31, 1985. Ms. Grooms initially hired another attorney, but the Respondent assumed responsibility for the representation when that attorney joined the law firm with which the Respondent was associated at the time. The Respondent left that law firm in August of 1989, but Ms. Grooms later asked the Respondent to resume representing her, and he agreed to do so.

19. At some point during Respondent's representation of Ms. Grooms, he requested a hearing before the Workers' Compensation Commission to consider the issue of nature and extent of permanent disability. Although a hearing was scheduled in 1992 as part of a regular docket at the Workers' Compensation Commission, the Respondent wanted to have Ms. Grooms' physician testify in person, necessitating a postponement to have the case specially set. From that point forward, the Respondent did not take reasonably diligent steps to have that hearing rescheduled.

20. During a period of time Ms. Grooms alleges she had no contact from Respondent, Ms. Grooms admits that she was in regular contact with Respondent concerning an unrelated real estate matter which Respondent successfully handled for Ms. Grooms.

21. In July 1994, the Respondent left the private practice of law to go to work for the Injured Workers' Insurance Fund. He did not notify Ms. Grooms of his new address or phone number.

22. Sometime after leaving his private practice office in 1994, the Respondent lost Ms. Grooms' file.

23. In January 1995, Ms. Grooms consulted another attorney, Richard Hackerman, Esquire about taking over her case. Mr. Hackerman agreed to look at the case and

attempted on several occasions throughout 1995 to contact the Respondent, both by writing to him and by making phone calls. Both Ms. Grooms and Mr. Hackerman sent correspondence to Respondent in January, 1995, but the correspondence was sent to the wrong address (Respondent was still using his old office as a mailing address, but the letters were addressed to a Randallstown zip code rather than the correct Baltimore zip code), and Respondent never received either correspondence. In a letter dated January 24, 1995, Ms. Grooms attempted to notify the Respondent that she was terminating his representation. At one point, the Respondent agreed to meet with Mr. Hackerman and to bring Ms. Grooms' file to go over it, but he never did so. The Respondent did not initially tell Mr. Hackerman that he could not locate Ms. Grooms' file.

24. At an Inquiry Panel hearing on October 9, 1996, the Respondent admitted that he could not locate Ms. Grooms' file, which he had been subpoenaed to produce at the hearing.

25. Respondent did, however, reconstruct the file and personally handed it to Ms. Grooms on November 18, 1996.

26. Ms. Grooms then gave the file to Mr. Hackerman who presently still has it and represents Ms. Grooms in her workers' compensation claim.

27. The reconstructed file turned over to Ms. Grooms by Respondent is complete and in good order.

28. No prejudice has accrued to Ms. Groom[s']rights in her workers' compensation claim by virtue of the delay in Respondent getting the file to her.

29. Even though Mr. Hackerman has had the file for almost one full year, Mr. Hackerman has not yet requested a hearing before the Maryland Workers' Compensation Commission."

Judge Daniels concluded that Respondent failed to act diligently with regard to Ms. Grooms's workers' compensation claim and thus violated Rule of Professional Conduct 1.3 which provides that a "lawyer shall act with reasonable diligence and

promptness in representing a client." In addition, Judge Daniels concluded that Respondent violated Rule of Professional Conduct 1.16(d)[4] by failing to provide Ms. Grooms or her new attorney, Mr. Hackerman, with her case file upon request after Ms. Grooms notified or attempted to notify Respondent that she was terminating his representation. Finally, Judge Daniels concluded that, by losing Ms. Grooms's file and then failing to promptly find or reconstruct the file, Respondent violated Rule of Professional Conduct 1.1 which provides that a "lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

## RESPONDENT'S EXCEPTIONS

Respondent filed exceptions to Judge Daniels's findings of fact and conclusions of law.

" 'To be sustained, the findings of fact of a hearing court must be supported by clear and convincing evidence.' *Attorney Griev. Comm'n. v. Kemp*, 335 Md. 1, 9, 641 A.2d 510, 514 (1994). Because this Court has original jurisdiction over disciplinary proceedings, we will make an 'independent, detailed review of the complete record with particular reference to the evidence relating to the disputed factual finding.' *Bar Ass'n v. Marshall,* 269 Md. 510, 516, 307 A.2d 677, 680–81 (1973)."

*Attorney Griev. Comm'n v. Alison,* 349 Md. 623, 629, 709 A.2d 1212, 1214–15 (1998). The findings made by the hearing court, however, are *"prima facie* correct and will not be disturbed unless clearly erroneous." *Attorney Griev. Comm.*

---

4. Rule of Professional Conduct 1.16(d) provides:

"Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law."

*v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 474 (1996). For the reasons set forth below, we conclude that there was clear and convincing evidence to support Judge Daniels's findings, and thus, they were not clearly erroneous.

### *Complaint of Anthony Raymond, Jr.*

Respondent argues that the transactions between Respondent and Mr. Raymond are not of the type contemplated by Rule of Professional Conduct 1.8(a) because he and Mr. Raymond were close personal friends and the transactions were not directly related to the attorney-client relationship. In support of his contention, Respondent cites *Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 614 A.2d 102 (1992). In *Powell,* this Court left open the question of whether the conduct of a lawyer falls within the scope of Rule of Professional Conduct 1.8(a) where the lawyer enters into a business transaction with a client who also is a personal friend. 328 Md. at 297–98 n. 23, 614 A.2d at 113 n. 23. The trial judge "found that the loan 'was a fair and equitable personal loan to a close friend'" and implicitly found that the lawyer advised the friend/client to seek the advice of independent counsel. *Powell,* 328 Md. at 296, 614 A.2d at 112–13. Without addressing the merits of Powell's argument that Rule of Professional Conduct 1.8(a) did not apply because the loan came from a close friend, we concluded that the record supported the hearing judge's finding that Powell's actions met the requirements of Rule of Professional Conduct 1.8(a). *Powell,* 328 Md. at 297–98 n. 23, 614 A.2d at 113 n. 23. For the following reasons, we conclude that Respondent's conduct in the instant case falls within the scope of Rule of Professional Conduct 1.8(a).

Rule of Professional Conduct 1.8(a) provides that "[a] lawyer *shall not* enter into a business, financial or property transaction with a client . . ." unless certain conditions are met. (Emphasis added). Where, as in the instant case, an attorney enters into a transaction with a client using the client's escrow funds held by the attorney during a period in which the attorney is actively representing the client, the

language of this rule is mandatory, and this Court will not read into the rule an exception for a client/personal friend of an attorney. Where there is a nexus between the transaction and the attorney-client relationship, we believe that Rule of Professional Conduct 1.8(a) covers the type of transaction before this Court even if the client, like Mr. Raymond, is a personal friend and is sophisticated in business matters. A client, even if a close friend, may be more likely to trust the attorney and less likely to scrutinize the financial transaction because of confidence in his or her professional advisor as well as the professional relationship between the attorney and client. As a result, the Rules of Professional Conduct provide safeguards to protect the client's trust and confidence.

We also disagree with Respondent's contention that the transactions between him and Mr. Raymond were not related to their attorney-client relationship. At the time of the transactions with Mr. Raymond, Respondent was actively representing Mr. Raymond in the Kilstein bankruptcy matter. Moreover, Respondent borrowed the same funds obtained in partial settlement of Mr. Raymond's claim in the Kilstein bankruptcy matter from Respondent's escrow account. There was a nexus between Respondent's transactions with Mr. Raymond and their attorney-client relationship, and thus, Rule of Professional Conduct 1.8(a) is applicable to the instant case. We need not determine whether Rule of Professional Conduct 1.8(a) is applicable where an attorney enters into a financial transaction with a friend who is also a client and where there is absolutely no nexus between the transaction and the attorney-client relationship.

■■ Under Rule of Professional Conduct 1.8(a), Respondent was prohibited from borrowing Mr. Raymond's funds unless: 1) the transactions were fair and equitable to Mr. Raymond; and 2) Respondent advised Mr. Raymond to seek the advice of independent counsel regarding the transactions and gave Mr. Raymond a reasonable opportunity to do so. We need not address the fairness of the transactions to Mr. Raymond as Respondent did not advise Mr. Raymond to seek

the advice of independent counsel with regard to the loan as required by Rule of Professional Conduct 1.8(a)(2). In the instant case, it may have been important for Respondent to advise Mr. Raymond to seek independent advice because any debt incurred by Respondent or Mr. Raymond as a result of illegal gambling might be unenforceable in this State. *See Emerson v. Townsend,* 73 Md. 224, 227–28, 20 A. 984 (1890). Furthermore, we reject Respondent's contention that the requirement of Rule of Professional Conduct 1.8(a)(2) does not apply because Mr. Raymond would not have sought the advice of independent counsel even if Respondent had advised Mr. Raymond to do so. An attorney's decision to inform a client to seek the advice of independent counsel should not rest upon the attorney's speculation as to whether the client will in fact seek such advice. We therefore overrule Respondent's exception and conclude that there is clear and convincing evidence in the record to support Judge Daniels's conclusion that Respondent violated Rule of Professional Conduct 1.8(a).

Respondent also contends that the transaction with Mr. Raymond does not fall within the scope of Md. Rule BU9. Respondent claims that he obtained the loan with the "full consent and permission of Mr. Raymond ... after the funds were deposited in Respondent's escrow account." Thus, Respondent argues, the transaction with Mr. Raymond did not constitute a loan from Respondent's escrow account but was a loan from Mr. Raymond. Maryland Rule BU9 plainly prohibited Respondent from borrowing funds required by the Maryland rules to be deposited in an attorney trust account. Regardless of whether Respondent obtained the loan with Mr. Raymond's "full consent and permission," the fact remains that Respondent borrowed client funds belonging to Mr. Raymond that were required to be deposited in an attorney trust fund account, instead of disbursing the funds to Mr. Raymond. Thus, Respondent's exception is overruled.

### Complaint of Carolyn Grooms

Respondent excepts to Judge Daniels's factual finding (number 19) that Respondent failed to take reasonably

diligent steps to have Ms. Grooms's hearing rescheduled and the conclusion that Respondent violated Rule of Professional Conduct 1.3, asserting that Judge Daniels's finding and conclusion were not established by clear and convincing evidence. In support of this contention, Respondent claims that neither party presented expert testimony concerning reasonable diligence, that Ms. Grooms's testimony was "unclear and confusing," and that Respondent testified that several obstacles delayed the rescheduling of the hearing before the Workers' Compensation Commission. We conclude, however, that there is clear and convincing evidence in the record to support Judge Daniels's finding that Respondent had not taken reasonably diligent steps to have a hearing rescheduled on the nature and extent of permanent disability when a 1992 date for the hearing was postponed. From that date until 1995 when Mr. Hackerman took over Ms. Grooms's claim, Respondent did not attempt to reschedule the hearing. Thus, expert testimony concerning reasonable diligence was not necessary under the circumstances of this case. Moreover, we note that the hearing judge "may pick and choose the evidence on which to base his findings," and Judge Daniels was free to disregard any testimony, including Respondent's, that was not credible. *Attorney Griev. Comm'n v. Miller,* 301 Md. 592, 603, 607, 483 A.2d 1281, 1287, 1289 (1984).

Respondent further argues that Mr. Hackerman had not rescheduled the hearing before the Workers' Compensation Commission as of January 15, 1998 even though he had Ms. Grooms's complete file since November of 1996, and thus Ms. Grooms suffered no prejudice as a result of the delay. The comment to Rule of Professional Conduct 1.3, however, states that "[e]ven when the client's interests are not affected in substance, . . . unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness." Thus, even if Ms. Grooms has not suffered any prejudice due to Respondent's delay, she still suffered needless anxiety for which Respondent is responsible. We therefore overrule Respondent's exception.

Respondent also excepts to Judge Daniels's conclusion that Respondent violated Rule of Professional Conduct 1.1, noting that "nothing in the record . . . support[s] the Conclusion that the loss of a file equals incompetent representation" in violation of Rule of Professional Conduct 1.1.[5] We agree, however, with Petitioner's statement that "Respondent's loss of Ms. Grooms' file demonstrated a lack of stewardship in managing client files." In our view, the thoroughness and preparation reasonably necessary for competent representation includes the proper management of case files. The loss of a file may substantially affect an attorney's ability to adequately prepare the client's case. Furthermore, Judge Daniels also based his conclusion that Respondent violated Rule of Professional Conduct 1.1 on the fact that Respondent failed to promptly reconstruct Ms. Grooms's file and not solely on Respondent's loss of the file. This conclusion is supported by clear and convincing evidence, and thus Respondent's exception is overruled.

Moreover, Respondent claims that there is not clear and convincing evidence supporting a violation of Rule of Professional Conduct 1.16(d) because it is not clear when Ms. Grooms notified Respondent that she was terminating their attorney-client relationship and that Mr. Hackerman would be her new attorney. In addition, Respondent asserts that he did not receive any written correspondence from Ms. Grooms regarding the termination of their attorney-client relationship. Respondent also claims that, as of October 9, 1996, Mr. Hackerman had not agreed to represent Ms. Grooms regarding her workers' compensation claim. Regardless of when Mr. Hackerman agreed to represent Ms. Grooms, it is clear that Ms. Grooms notified or attempted to notify Respondent that his representation was terminated as early as January of 1995. Although Respondent did not receive any written correspondence, it is apparent from the record that, sometime prior

---

5. We note that Respondent concedes that this Court could find a lack of diligence with regard to his handling of the Grooms claim after he lost the Grooms file.

to August 31, 1995, Respondent communicated by phone with Mr. Hackerman regarding the Grooms matter and promised to send him a copy of the file. Respondent, however, did not provide Ms. Grooms with a reconstructed file until November 18, 1996. Thus, we find that there is clear and convincing evidence that Respondent failed to "take steps to the extent reasonably practicable to protect [Ms. Grooms's] interests" upon termination of representation, in violation of Rule of Professional Conduct 1.16(d).

Finally, Respondent excepts to finding number 24, arguing that it implies that Respondent admitted for the first time at the Inquiry Panel hearing that he could not locate Ms. Grooms's file when Ms. Grooms's new attorney, Mr. Hackerman, testified that Respondent informed him of this fact well before the Inquiry Panel hearing. We agree with Respondent's statement as to Mr. Hackerman's testimony. While finding number 24 on its own indicates that Respondent admitted to misplacing the file, the last sentence of finding number 23 states that "[t]he Respondent did not initially tell Mr. Hackerman that he could not locate Ms. Grooms' file." When read in this context, finding number 24 does imply that Respondent admitted to misplacing the file for the first time at the Inquiry Panel hearing. We therefore sustain Respondent's exception as to finding number 24 with regard to the above implication.

## SANCTION

We now must determine the proper sanction for Respondent's misconduct. In sanctioning Respondent, we note that "[t]he purpose of disciplinary proceedings against an attorney is to protect the public rather than to punish the erring attorney." *Attorney Griev. Com'n v. Hamby,* 322 Md. 606, 611, 589 A.2d 53, 56 (1991). "The public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm. v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997). The severity of the sanction depends upon the facts and circumstances of the

case before this Court. *Hamby,* 322 Md. at 611, 589 A.2d at 56. Imposing a sanction protects the public interest "because it demonstrates to members of the legal profession the type of conduct which will not be tolerated." *Id.*

Petitioner recommends that Respondent be suspended for one year and that upon reinstatement an attorney monitor be appointed for a two-year period if Respondent returns to private practice. While Respondent concedes that he "fail[ed] to preserve for five years his escrow account records relating to his representation of Mr. Raymond and [lost] Ms. Grooms's file," he maintains that he should merely be reprimanded. Respondent argues that the uncertainty with regard to Rule of Professional Conduct 1.8(a) is at least "a mitigating factor with respect to Respondent's failure to so advise Mr. Raymond, especially in light of the trial court's uncontested finding that Mr. Raymond would not have sought the advice of independent counsel had he been so advised." As we stated earlier, we believe that the application of Rule of Professional Conduct 1.8(a) is clear in the instant case, and we will not consider the fact that Mr. Raymond would not have sought the advice of independent counsel as a mitigating factor.

We note that Respondent has been practicing for over twenty years and that he has not previously been sanctioned by this Court. We also note that it appears that Respondent did not intend to defraud Mr. Raymond of the Kilstein bankruptcy funds. This Court, however, has found that Respondent has violated disciplinary rules by entering into inappropriate financial transactions with a client, borrowing client funds, failing to maintain adequate trust account records, losing a client's file, and demonstrating a lack of diligence in handling a client's case. Upon careful consideration in this matter, we conclude that the appropriate sanction is to suspend Respondent from the practice of law for a period of thirty days. This suspension shall be effective thirty days from the filing of this opinion.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS**

COURT, INCLUDING THE COSTS OF ALL TRAN-
SCRIPTS, PURSUANT TO MARYLAND RULE 16–715c,
FOR WHICH JUDGMENT IS ENTERED IN FAVOR OF
THE ATTORNEY GRIEVANCE COMMISSION OF MA-
RYLAND AGAINST WILLIAM OBER.