817 A.2d 218

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

**v.**

**Charles E. McCLAIN.**

**Misc. AG No. 53, Sept. Term, 2001.**

Court of Appeals of Maryland.

Feb. 24, 2003.

Melvin Hirshman, Bar Counsel and Dolores O. Ridgell, Assistant Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

James Brewster Hopewell, Riverdale, for respondent.

Argued Before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel, acting at the direction of the Review Board, *see* Maryland Rule 16–709,[1] filed a Petition For Disci-

---

1. Until June 30, 2001, Maryland Rule 16–709, as relevant, provided:

   "a.  Who may file.  Charges against an attorney shall be filed by the Bar Counsel acting at the direction of the Review Board."

plinary Action against Charles E. McClain, Sr., the respondent, charging him with misconduct, consisting of violations of various Maryland Rules, including the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812, governing attorney trust accounts, and a section of the Business Occupations and Professions Article. The petitioner alleged that the respondent violated Rules 1.1, Competence,[2] 1.15, Safekeeping Property,[3] 16–606, Name and Designation of

Maryland Rule 16–741 now governs the filing of petitions for disciplinary actions, now characterized as statements of charges. Adopted November 30, 2000, effective July 1, 2001, it provides:

"(a) Filing of Statement of Charges.

"(1) Upon completion of an investigation, Bar Counsel shall file with the Commission a Statement of Charges if Bar Counsel determines that:

"(A) the attorney either engaged in conduct constituting professional misconduct or is incapacitated;

"(B) the professional misconduct or the incapacity does not warrant an immediate Petition for Disciplinary or Remedial Action;

"(C) a Conditional Diversion Agreement is either not appropriate under the circumstances or the parties were unable to agree on one; and

"(D) a reprimand is either not appropriate under the circumstances or (i) one was offered and rejected by the attorney, or (ii) a proposed reprimand was disapproved by the Commission and Bar Counsel was directed to file a Statement of Charges."

Although pursuant to the Rules Order, the new rules became effective July 1, 2001, the Rules Order excepted "any matter pending before an Inquiry Panel, the Review Board, or the Court of Appeals pursuant to charges, a petition, or an application pending as of June 30, 2001," which, it provided, "shall continue to be governed by the Rules in effect on June 30, 2001."

2. Rule 1.1 of the Maryland Rules of Professional Conduct requires a lawyer to "provide competent representation to a client," which the Rule defines as consisting of "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

3. Pursuant to Maryland Rule 1.15, as relevant

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

Account,[4] and 16–607, Commingling of Funds,[5] and Maryland

"(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

"(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved."

4. Rule 16–606 provides:

"An attorney or law firm shall maintain each attorney trust account with a title that includes the name of the attorney or law firm and that clearly designates the account as 'Attorney Trust Account', 'Attorney Escrow Account', or 'Clients' Funds Account' on all checks and deposit slips. The title shall distinguish the account from any other fiduciary account that the attorney or law firm may maintain and from any personal or business account of the attorney or law firm."

5. "a. General Prohibition. An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.

"b. Exceptions.

"1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16–610 b 1(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

"2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

"3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners."

Code (1989, 2000 Replacement Volume) § 10–303 of the Business Occupations and Professions Article.[6]

We referred the case to the Honorable James J. Lombardi, Jr., of the Circuit Court for Prince George's County, for hearing. *See* 16–711.a.[7] Following the hearing, the hearing court made findings of fact, as follows:

"On October 28, 1998, McClain filed an action for foreclosure on behalf of his clients, Harry and Janet Stello (the Stellos), in the Circuit Court for Anne Arundel County. McClain was the substitute trustee on a Deed of Trust from Manuel Nelson and Delama Nelson to the Stellos. The property was described in the Deed of Trust as 'Lot No. One (1) in the subdivision known as "The Harry E. Stello Property, Montevideo Road." ' "

"McClain prepared a foreclosure notice citing the above property description and the house address as '2076 Montevideo Road, Jessup, Maryland.' The sale was set for May 27, 1999. Among other things, the terms of the sale required a deposit of $5,000.00 and the balance of the purchase price to be paid within ten days after the final ratification of the sale."

"McClain hired John Cassidy ('Cassidy') as an auctioneer for the sale. On the day of the sale one of the potential bidders, James Wilson, was uncertain as to the precise location of the property and whether there were any subordinate liens. McClain did not conduct a title examination prior to the sale. McClain, Cassidy and Wilson went to the county land records office to determine which parcel was

---

**6.** Maryland Code (1989, 2000 Replacement Volume) § 10–303(a), Business Occupations and Professions Article, subject to exceptions not here relevant, requires a lawyer to "deposit trust money in an attorney trust account, all interest on which is payable to the Maryland Legal Services Corporation Fund established under § 7-408 of the Courts Article."

**7.** Maryland Rule 16–711.a provides:
"a. Findings. A written statement of the findings of facts and conclusions of law shall be filed in the record of the proceedings and copies sent to all parties."
See Rule 16–757, effective July 1, 2001.

being sold and conduct a brief title search. Cassidy found a title searcher whom he knew and she assisted them in doing a cursory examination of the land records. That search revealed that there were two houses on the property described in the legal description on the foreclosure notice; namely, 2076 and 2076A Montevideo Road. Accordingly, the correct property address was the one named in the foreclosure notice but the legal description had changed. That search did not turn up a number of IRS liens in excess of $70,000. The sale took place and the successful bidders were James and Edward Wilson (the Wilsons) doing business as Creek Properties L.L.C. The Wilsons gave McClain a certified check in the amount of $10,000 that was $5,000 over the required deposit. On June 1, 1999 McClain deposited this check in his escrow account at Suburban Bank and returned $5,000 immediately to the Wilsons as it was in excess of the required deposit. McClain's checking account at Suburban Bank was titled 'C.E. McClain Sr. & Associates LLC.' His checks were titled the same way with the addition of 'Escrow Account' under his. name. His deposit slips were not printed with any name other than Suburban Bank. Also, on June 1, 1999 McClain wrote himself a check in the amount of $1900. His bank statements showed that the ending balance in his account in April 1999 was $1952.32 and in May $1604.33. He testified he did not reconcile his bank statements."

"After the sale the Wilsons determined through a more complete title search that there were junior lienholders on the property (the IRS liens and a second deed of trust). Wilson asked McClain to produce evidence that notice of the sale had been given to them. McClain could not do so because he did not learn about them prior to the sale. On or about August 10, the Wilsons requested a refund of their $5,000 deposit. McClain did not respond to this request until September 7 when he tendered a check in the amount of $5,000 from his escrow account. McClain's check was returned by Suburban Bank for insufficient funds and the Wilsons so notified McClain. On or about September 17,

McClain purchased a certified check for $4,600 and wrote a personal check for $400 and sent the two checks to the Wilsons. McClain's personal check in the amount of $400 was returned for insufficient funds. Thereafter McClain purchased a money order in the amount of $400 to satisfy his obligation to the Wilsons. When McClain wrote himself the check in the amount of $1,900.00, he felt that he was entitled to it as his "guess" of one-half of the trustee's commission. He said he relied on the Deed of Trust provision that if the property 'shall be advertised for sale ... and not sold, the trustee or trustees acting shall be entitled to one-half the commission above provided'. However, during his testimony before the Inquiry Panel he said that he paid himself $1,900 because he had left over funds in his escrow account that belonged to him prior to the foreclosure deposit. During his trial testimony on re-cross-examination he offered a third explanation; namely, that he took the $1900 because he thought the sale would 'go through.' "

"When the sale failed the Stellos contacted Carlton Green, Esq. ("Green") to represent their interests. In August of 1999 Green asked McClain for information about the sale. Green ascertained that IRS had never been notified so its lien could be subordinated to the bid at the foreclosure sale. Green also learned from the Wilsons that two of McClain's escrow checks had been returned for insufficient funds and felt that it was his duty under Section 8.3 of the Code of Professional Conduct to notify Bar Counsel. Later through Green's efforts the Stellos and Wilson agreed to purchase the Stellos' interest in the Deed of Trust for approximately $64,000. Subsequently, the Wilsons instituted their own successful foreclosure proceedings against this property."

On these findings, the hearing court concluded [8] that the

---

8. In reaching these conclusions, the hearing court acknowledged that the petitioner presented six witnesses in support of its case and commented on the testimony of certain of those witnesses. The testimony of the Wilsons and Green, the attorney who succeeded the respondent, was credited for the findings of fact the court made. With respect to the Rule 16-606 violation, the hearing court relied on the testimony of

respondent violated Rules 1.15.a.[9] and 16–606, but did not

John Debone, "who oversees attorney trust accounts for the AGC." It reported that he testified that the titling of the respondent's escrow account "was a violation of the Code of Professional Conduct because nowhere on the face of his checks or deposit slips were the words 'Attorney' or 'Law Offices,' resulting in the bank in which the account was held not reporting the respondent's overdraft to Bar Counsel.

The hearing court also detailed the testimony of the petitioner's expert witness on Maryland foreclosure law both as to the mistakes the respondent made in handling the foreclosure sale and the standard of competency in the area:

> "He testified that McClain, prior to the sale, made mistakes in failing to order a title report, failing to notify IRS of the sale, failing to notify the second Deed of Trust holder, and in failing to obtain waivers from the junior lienholders. He testified that McClain, after the sale, failed to make a report of sale within thirty days of the sale pursuant to Md. Rule 14–305. He opined that some courts would extend the filing of the report beyond thirty days where there were difficulties making the report within thirty days. He testified that although there is no provision in the Maryland Rules of Procedure that requires a title search prior to sale by an attorney handling a foreclosure proceeding, attorneys that practice in this field routinely do so. He also testified that these attorneys know that IRS must be notified within twenty-five days prior to sale in order to trigger an automatic subordination of the lien to the foreclosure sale. He said that all other lienholders must be notified according to the Maryland Rules of Procedure not more than thirty days nor less than ten days prior to the foreclosure sale. He opined that even a thorough title search done on the date of sale would be too late to accomplish these duties. He further testified that there was no such thing as a simple foreclosure and that in the course of his thirty-six years of practice he had made all of the same mistakes that McClain had made. Finally, he said that attorneys handling foreclosure proceedings learn their craft from the following three sources: (1) The Maryland Rules of Procedure; (2) GORDON ON FORECLOSURE; (3) The School of Hard Knocks."

Finally, the hearing court reviewed the testimony of a board certified forensic psychiatrist who had evaluated the respondent for mental disorders "that he might be suffering as a possible cause of his problems which led to this disciplinary proceeding. She concluded, it points out, that the respondent's alcohol use does not "meet the definition of alcohol dependence but that … his use of alcohol may have contributed to an inattention to detail and lackadaisical attitude." (Footnote omitted).

9. Specifically excepted from this conclusion was any violation of that portion of Rule 1.15.a., requiring the keeping of complete records of trust account funds for "a period of five years after termination of the representation," the hearing court having clearly concluded that "[t]here was no evidence as to McClain's failure to keep records for five years in violation of Rule 1.15 of the Rules of Professional Conduct [and

violate Rules 1.1, 1.15.b., and 16–607.[10]  It explained each conclusion, in turn.

With respect to the Rule 16–606 violation, the failure to designate clearly his escrow account with his name or the name of his law firm and to indicate on his checks or deposit slips that he was an attorney was, to the hearing court, "clear non-compliance" with the Rule.  It noted in that regard, "[i]t is true that the account was an escrow account but as Suburban Bank concluded, there was no way to know by looking at the account that it was an attorney's account as distinguished from any other business or personal account."  Explaining its conclusion that the respondent violated Rule 1.15, the hearing court, said:

> "Whether McClain withdrew $1,900 because he thought he had sufficient monies from prior fees that he had not withdrawn or whether he thought he was entitled to $1,900 trustee's commission, he violated Rule 1.15 of the Rules of Professional Conduct by failing to hold Wilsons' entire deposit in his trust account.  Under his prior fee theory he was still $300 short and used part of the funds of a third party for his own use.  Under his trust commission theory these funds still belonged to the Wilsons to be held in trust for the Stellos until released by the Stellos.  The court finds this is the most serious charge against McClain.  Not only did he violate Rule 1.15, but he has cast grave doubt on his credibility.  His conflicting explanations, under oath, are not like allowable alternative defenses in a civil complaint.  His own explanations undermine his argument that his violation was unintentional.  While the court might find his explanation plausible under his prior fee theory, once McClain abandoned that explanation in lieu of his trust commission

---

that] the account was only two years old at the time of the foreclosure sale."

**10.**  Although the petitioner charged a violation of § 10–303 and there is evidence, especially the hearing court's finding of the respondent's non-compliance with Rule 16–606, the hearing court made no finding in that regard and the petitioner did not except to that failure.  Accordingly, we do not address the issue.

theory he succeeded only in raising a question of his trustworthiness.

> "The court cannot say under a clear and convincing standard that McClain's violation was willful or that it was consciously done for an unlawful purpose. However the court does find that McClain's protestations of mere negligence are implausible."

Turning to the Rules violations charged, but not found, the hearing court was equally forthcoming. It did not find a violation of Rule 16–607 due to a lack of "clear and convincing evidence that [the respondent] allowed prior fees to remain in his trust account for any appreciable length of time." Furthermore, the hearing court pointed out that, "$1,600 of the $1,900 was clearly not from the deposit and could very well have been from funds belonging to [the respondent] alone. In any event there was no clear and convincing evidence as to how long the prior fees were in his account or that he did not withdraw them within a reasonable time as the commingling rule provides."

As indicated, the hearing court did not find that the respondent was incompetent. While it did find that the respondent made some mistakes in conducting the foreclosure sale, respondent "failed to do some things a more experienced foreclosure attorney would have done," it was not convinced that they rose to the level of incompetence. The hearing court explained:

> "[T]here is no rule in Maryland that requires foreclosure proceedings to be conducted only by attorneys who specialize in that field. As the testimony indicated, it is common for many attorneys to make the same mistakes with IRS that McClain made. Regrettably, they may not be familiar with IRS's twenty-five day lien notice provision. The AGC's expert witness testified that he has made the same mistakes that McClain made and that he had to learn the hard way. The notice of the foreclosure proceeding turned out to be correct. There is no requirement that the attorney handling a foreclosure sale (other than a tax sale foreclosure [2])

must order a title search prior to the sale. There is also no requirement that a lawyer must consult GORDON ON FORECLOSURES no matter how prudent this might be. Rule 1.1 of the Rules of Professional Conduct provides that '[C]ompetent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation". A lawyer need not necessarily have special training to handle legal problems of a type with which the lawyer is unfamiliar. McClain had conducted four or five prior foreclosures without incident. The court cannot say that the AGC has presented clear and convincing evidence that McCain was incompetent under these circumstances to trigger the sanctions of Rule 1.1 in light of the testimony of the AGC's own expert witnesses."

"[2] § 14–836(b)(1) of the Tax–Property Article (formerly Article 81, § 103) provides that a title search is required prior to the foreclosure sale of tax sale property. Unaccountably, a similar provision does not appear in Maryland Rule 14–206."

The petitioner excepted to the hearing court's failure to conclude that the petitioner presented clear and convincing evidence that the respondent was incompetent pursuant to Rule 1.1. Noting that its expert witness on foreclosure, whose credentials the hearing court did not question, testified that the respondent was incompetent, and submitting, relying on *Attorney Griev. Comm'n v. Brown*, 308 Md. 219, 232, 517 A.2d 1111, 1117 (1986), that "[t]rivial errors which, when viewed individually, would not sustain a finding of incompetent representation, can constitute incompetence when viewed collectively or cumulatively," and that "[t]he numerous errors made by the respondent combined with his failure to take any action to salvage the situation collectively constitute incompetence in violation of MRPC 1.1," the petitioner argues that the hearing court's finding to the contrary was clearly erroneous. Indeed, it suggests that the finding "appears to be based primarily on the fact that the expert witness testified that he had made the same mistakes as Respondent." Detailing the mistakes that the respondent made and reminding us that the expert testified that in his opinion the respondent did not exercise the legal knowledge, skill, thoroughness and preparation that was

reasonably necessary to represent his clients, it concludes that it "presented unrebutted clear and convincing evidence" of the respondent's incompetence and, thus, violation of Rule 1.1.

The appropriate sanction, the petitioner recommends, is an indefinite suspension with the right to apply for readmission after one year. In support, the petitioner relies on all of the violations found as well as the violation of Rule 1.1, which it contends the hearing court should have found. It contends, however, that the respondent's violation of Rule 1.15, "his failure to safeguard the bidder's deposit and his use of part of the funds for his own purposes is the most serious violation and alone warrants the proposed sanction." In addition, although it recognizes that the hearing court did not find that the violation was consciously done or done for an unlawful purpose, the petitioner finds it significant that the hearing court "did find that the Respondent's protestations of mere negligence were implausible and that the Respondent's testimony at trial, which conflicted with his sworn testimony at the Inquiry Panel hearing, raised questions of his credibility and undermined Respondent's argument that his violation was unintentional." The petitioner equates this case to *Attorney Griev. Comm'n v. Berger*, 326 Md. 129, 604 A.2d 58 (1992), in which the sanction it recommends was imposed.

The respondent also filed an exception and offered a recommendation as to the appropriate sanction. His exception was premised on the hearing court's finding as to the Rule 1.15 violation being based on paragraph (c) of that Rule. Conceding that the escrow account into which he placed the foreclosure deposit was not designated as an attorney trust account or an attorney escrow account, but pointing out that when this deficiency was brought to his attention, he immediately corrected it and, in fact, completed a course entitled "Escrow Account Management," the respondent maintains that the only necessary, and therefore appropriate, sanction is a reprimand.

We shall overrule the exceptions filed by both the petitioner and the respondent. To be sustained, the findings of fact of a hearing court must be supported by clear and

convincing evidence.  Rule 16–759.b.2.B.  Thus, exceptions can be sustained only if, upon an independent review of the record, we conclude that the hearing court's findings are not supported by clear and convincing evidence.  *Attorney Griev. Comm'n v. Sheinbein,* 372 Md. 224, 241, 812 A.2d 981, 990 (2002) ("A hearing court's findings of fact are *"prima facie* correct and will not [be] disturb[ed] unless they are shown to be clearly erroneous." "); *Attorney Griev. Comm'n v. Goldsborough,* 330 Md. 342, 347, 624 A.2d 503, 505 (1993); *Attorney Griev. Comm'n v. Kemp,* 335 Md. 1, 9, 641 A.2d 510, 514(1994); *Attorney Griev. Comm'n v. Rohrback,* 323 Md. 79, 93–94, 591 A.2d 488, 495 (1991); *Attorney Griev. Comm'n v. Kerpelman,* 288 Md. 341, 375, 420 A.2d 940, 956 (1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981).

■ Taking the respondent's first, we note that the hearing court did not specifically identify the paragraph of Rule 1.15 it found that the respondent violated.  To be sure, it expressly found no violation of the record retention provision of Rule 1.15, but it also found that the Rule was violated because the respondent did not hold the entirety of the deposit on the foreclosure sale in his trust account.  Rule 1.15.c. does require that, during the course of representation, a lawyer in possession of property in which the lawyer and another person claims an interest, must keep the property separate until there is an accounting and severance and, thus, may apply to this situation.  On the other hand, while Rule 1.15.a contains the record retention provision, which the hearing court expressly found had not been violated, it also provides that "[a] lawyer shall hold property of clients or third parties that is in a lawyer's possession in connection with a representation separate from the lawyer's own property," in an account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, Attorney Trust Accounts.

The respondent states in his exceptions that he withdrew the $1900 from the escrow account because he believed it was the amount of the "fee he was entitled to under the terms of the Deed of Trust."  The hearing court's finding took account

of that theory as well as the alternative one, that the respondent thought he had sufficient funds from prior fees that he had not taken. That finding is not clearly erroneous.

■ The petitioner's quarrel with the hearing court's findings on incompetence in its analysis, its emphasis on an aspect of the expert witness's testimony, rather than the totality of it. It believes, as it argues, that the hearing court focused too much on that portion of the expert's testimony acknowledging that he had made the same mistakes over the course of the expert's career and the absence of a procedural rule requiring an attorney handling a foreclosure sale to order a title search prior to the sale, and not enough, indeed, failed to consider, the totality of the respondent's conduct and its effect and the facts and circumstances of the case. The petitioner questions, in short, a factual finding by the hearing court, which not only heard, but also was able to observe the demeanor of the witnesses whose testimony it credited. *Attorney Griev. Comm'n v. Awuah*, 346 Md. 420, 433, 697 A.2d 446, 453 (1997).

To be sure, the hearing court was free to adopt the analysis that the petitioner offers as the proper one. It was not required to do so, however. The hearing court could have, as it did, chosen a different analysis, which, if it does not result in findings that are clearly erroneous or produce a result that does not follow from the facts found, is entitled to deference. Indeed, we have said that a hearing court is free to pick and choose from among the evidence offered by the various witnesses. *Attorney Griev. Comm'n v. Monfried*, 368 Md. 373, 388, 794 A.2d 92, 100 (2002); *Attorney Griev. Comm'n v. Fezell*, 361 Md. 234, 253, 760 A.2d 1108, 1118 (2000); *Attorney Griev. Comm'n v. Hines*, 366 Md. 277, 291, 783 A.2d 656, 664 (2001). Having conducted an independent review of the record, we are satisfied that the hearing court's findings as to the respondent's competency are not clearly erroneous.

■ Our final responsibility is to determine the appropriate sanction. We have long recognized "that the purpose of disciplinary actions ... is not to punish the offending attorney, as that function is performed in other types of legal proceed-

ings, but it is to protect the public from one who has demonstrated his unworthiness to continue the practice of law." *Bar Ass'n of Baltimore City v. Marshall,* 269 Md. 510, 519, 307 A.2d 677, 682 (1973). *See Attorney Griev. Comm'n v. Santos,* 370 Md. 77, 87, 803 A.2d 505, 510 (2002); *Attorney Griev. Comm'n v. Eisenstein,* 333 Md. 464, 486–87, 635 A.2d 1327,-1338 (1994). It is also well settled that the decision as to sanction in a particular case does, and must, depend on the facts and circumstances of that case. *Attorney Griev. Comm'n v. Garfield,* 369 Md. 85, 98, 797 A.2d 757, 764 (2002). *See Attorney Griev. Comm'n v. Hayes,* 367 Md. 504, 519, 789 A.2d 119, 129 (2002); *Attorney Griev. Comm'n v. Jeter,* 365 Md. 279, 290, 778 A.2d 390, 396 (2001); *Attorney Griev. Comm'n v. Tolar,* 357 Md. 569, 585, 745 A.2d 1045, 1053 (2000); *Attorney Griev. Comm'n v. Franz,* 355 Md. 752, 761, 736 A.2d 339, 343–44 (1999); *Attorney Griev. Comm'n v. Ober,* 350 Md. 616, 631–32, 714 A.2d 856, 864 (1998); *Attorney Griev. Comm'n v. Hamby,* 322 Md. 606, 611, 589 A.2d 53, 56 (1991); *Attorney Griev. Comm'n v. Babbitt,* 300 Md. 637, 642, 479 A.2d 1372, 1375 (1984).

Relevant to the sanction decision is "the nature and gravity of the violations and the intent with which they were committed." *Awuah, supra,* at 435, 697 A.2d at 454. *See Attorney Griev. Comm'n v. Pennington,* 355 Md. 61, 78, 733 A.2d 1029, 1037–38 (1999); *Attorney Griev. Comm'n v. Milliken,* 348 Md. 486, 519, 704 A.2d 1225, 1241 (1998); *Attorney Griev. Comm'n v. Montgomery,* 318 Md. 154, 165, 567 A.2d 112, 117 (1989). Likewise relevant are the attorney's prior grievance history, whether there have been prior disciplinary proceedings, the nature of the misconduct involved in those proceedings and the nature of any sanctions imposed, as well as any facts in mitigation, *Franz,* 355 Md. at 762–63, 736 A.2d at 344; *Maryland State Bar Ass'n v. Phoebus,* 276 Md. 353, 362, 347 A.2d 556, 561 (1975), the attorney's remorse for the misconduct, *Attorney Griev. Comm'n v. Wyatt,* 323 Md. 36, 38, 591 A.2d 467, 468 (1991), and the likelihood of the conduct being repeated. *Attorney Griev. Comm'n v. Freedman,* 285 Md. 298, 300, 402 A.2d 75, 76 (1979). As to the latter, we have

held that an attorney's voluntary termination of the charged misconduct, when accompanied by an appreciation of the serious impropriety of that past conduct and remorse for it, may be evidence that the attorney will not again engage in such misconduct. *Freedman*, 285 Md. at 300, 402 A.2d at 76. *See Franz*, 355 Md. at 762–63, 736 A.2d at 344. *See also Attorney Griev. Comm'n v. Harris–Smith*, 356 Md. 72, 90–91, 737 A.2d 567, 577 (1999) (acknowledging the principal objective of sanction in that case, deterrence of other non-admitted attorneys from undertaking a federal practice from an office in Maryland, was achieved when the firm dissolved after bar counsel's investigation commenced).

We believe that a thirty day suspension suffices as a sanction in this case. As we have seen, the respondent violated Rule 1.15 by failing to hold the entire amount of the deposit given him by the successful bidder at the foreclosure sale and Rule 16–606 by not properly naming and designating his escrow account as an attorney trust account. As to the former, while questioning the respondent's trustworthiness and expressing doubt whether the violation was merely negligent, the hearing court did not find clear and convincing evidence that it was willful or consciously done for an unlawful purpose. As to the latter, the violation has been corrected and, indeed, that was done shortly after the respondent was made aware of the problem. In addition the record reflects that, subsequent to the events giving rise to this case, the respondent has taken a course in escrow account management. The respondent has no history of disciplinary proceedings.

*Berger, supra,* 326 Md. 129, 604 A.2d 58, on which the petitioner relies, involves conduct much more egregious than that in which the respondent engaged and, thus, does not provide the proper yardstick. In that case, the lawyer violated Rule 1.15, by mismanaging his escrow account; Rule 1.3, by failing to act diligently in the matter; and Rule 1.4, by failing promptly to reply to the client's reasonable requests for information. *Attorney Griev. Comm'n v. Berger,* 323 Md. 428, 429, 593 A.2d 1103, 1104 (1991). The hearing court "characterized Berger's actions as 'gross and wanton negligence

amounting to a total disdain and disregard for his duties to safeguard his client's money.'" *Berger*, 326 Md. at 130–31, 604 A.2d at 58.

More comparable are *Awuah* and *Attorney Griev. Comm'n v. Webster*, 348 Md. 662, 705 A.2d 1135 (1998). In *Awuah*, the hearing court found, and this Court sustained, violations of Rule 8.4(b), the Rules charged pertaining to his attorney trust account, including Rule 1.15, and § 10–302 of the Business Occupations and Professions Article. 346 Md. at 425, 697 A.2d at 449. The hearing court having specifically found that the respondent did not misappropriate funds entrusted to him, *id.* at 434, 697 A.2d at 454, we noted that the respondent's violations resulted from negligent, rather than intentional misconduct, that the respondent had shown substantial mitigation and that the respondent has taken steps to, and, was then in compliance with the rules pertaining to the maintenance of trust accounts. *Id.* at 435–36, 697 A.2d at 454.

In *Webster*, the respondent was found to have violated Rules 16–607, prohibited the commingling of funds, and 16–609, proscribing, inter alia, the drawing of checks payable to cash on an attorney trust account, but not Rule 1.15. The respondent in that case had placed his personal funds, business funds, and other funds that were not received in connection with a representation in an attorney trust account. In addition, he kept no accounting of the funds belonging to a third party previously deposited into the account and he wrote checks payable to cash from that account. 348 Md. at 678, 705 A.2d at 1143. For these violations, we concluded that a sanction of thirty days suspension was appropriate. *Id.* at 679, 705 A.2d at 1143.

Considering all of the circumstances of this case, we believe that the same sanction should be imposed in this case. The suspension shall commence thirty days after the date of the filing of this opinion.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PUR-

SUANT TO MARYLAND RULE 16–715(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST CHARLES E. McCLAIN, SR.