844 A.2d 397

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Leonard J. SPERLING.**

Misc. Docket AG, No. 4, Sept. Term, 2003.

Court of Appeals of Maryland.

March 11, 2004.

Melvin Hirshman, Bar Counsel, Glenn M. Grossman, Deputy Bar Counsel for Atty. Grievance Com'n, for petitioner.

Matthew A. Ranck, Baltimore, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BELL, Chief Judge.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel filed, pursuant to Maryland Rule 16–751 [1] of the Maryland Rules of Procedure, a Petition For

---

**1.** Rule 16–751 of the Maryland Rules of Procedure provides, as relevant:

Disciplinary Or Remedial Action, against Leonard J. Sperling, the respondent, in which it was charged that the respondent violated Rules 1.15, Safekeeping Property,[2] and 8.4, Miscon-

"(a) Commencement of Disciplinary or Remedial Action. Upon approval of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."
Upon the completion of an investigation by Bar Counsel, unless there is a recommendation pursuant to Rule 16–735 (dismissal of the complaint or termination of the proceeding without discipline), Rule 16–736 (Conditional Diversion Agreement), 16–737(reprimand) or Rules 16–771, 16–773, or 16–774 (immediate filing of a Petition for Disciplinary or Remedial Action), Rule 16–734(d) requires that Bar Counsel "file with the Commission a Statement of Charges with an election for peer review in accordance with Rule 16–741."
Maryland Rule 16–741 governs the filing of statements of charges. It provides:
"(a) Filing of Statement of Charges.
"(1) Upon completion of an investigation, Bar Counsel shall file with the Commission a Statement of Charges if Bar Counsel determines that:
"(A) the attorney either engaged in conduct constituting professional misconduct or is incapacitated;
"(B) the professional misconduct or the incapacity does not warrant an immediate Petition for Disciplinary or Remedial Action;
"(C) a Conditional Diversion Agreement is either not appropriate under the circumstances or the parties were unable to agree on one; and
"(D) a reprimand is either not appropriate under the circumstances or (i) one was offered and rejected by the attorney, or (ii) a proposed reprimand was disapproved by the Commission and Bar Counsel was directed to file a Statement of Charges."

2. Rule 1.15 provides:
"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
"(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify a client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

duct,[3] of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812. Bar Counsel also alleged that the respondent violated Maryland Code (1989, 2000 Replacement Volume) § 10–306 of the Business Occupations and Professions Article.[4]

We referred the case to the Honorable Michael J. Finifter, of the Circuit Court for Baltimore County, for hearing. *See* 16–757. Following the hearing, at which both the petitioner and the respondent appeared and participated, the hearing court concluded: "Respondent unintentionally and unknowingly violated Maryland Lawyer's Rule of Professional Conduct 1.15 . . ., Rule 8.4 ([a]) . . . and Section 10–306 of the Business Occupations and Professions Article, Maryland Code, when he failed to realize that a shortfall had been created and existed in his trust account due to his failure to reconcile his account." *See* Rule 16–757(c).[5] These conclusions of law flowed from findings of fact, made by the trial court to the requisite degree of certainty, i.e. clear and convincing proof. *See* Rule 16–757(b).[6] Further, it was not disputed by the respondent, that,

---

3. Rule 8.4, as relevant, provides:

 "It is professional misconduct for a lawyer to:
 (a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another."

4. Maryland Code (1989, 2000 Replacement Volume) § 10–306 of the Business Occupations and Professions Article provides: "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

5. Maryland Rule 16–757(c) provides:

 "(c) Findings and Conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

6. Maryland Rule 16–757(b) reads:

following an investigation and analysis by Bar Counsel, the respondent's trust account had a shortfall of $42,415.91, for which the respondent could not, and did not, account.[7] The investigation into the respondent's trust account was not triggered by a complaint alleging that the respondent had engaged in misconduct. On the contrary, the hearing court found as a fact that "[t]here have been no complaints by any client of Respondent or other person for whom Respondent was holding funds with regard to, or as the result of, the aforementioned shortfall." Rather, it was the petitioner's receipt of a notice from the bank in which the respondent's trust account was deposited, that a check drawn on the respondent's trust account had been returned for non-sufficient funds (NSF) that formed the basis for the investigation.[8] The trust account was brought into balance on or about January 8, 2003, when the respondent deposited his personal funds, in the amount of the shortfall, into the account.

The hearing court made additional findings of fact. The cause of the shortfall was "one or more errors in the administration of the account prior to January 1, 2001," the source of

"(b) Burdens of Proof. The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence."

7. The petitioner's investigative findings were that, as of December 31, 2001, there should have been $96,454.16 in the respondent's trust account, but that, at that time, the account contained only $54,038.25. The accuracy of these findings was not contested, and indeed was conceded, by the respondent.

8. The respondent explained the reason for the NSF notice: because the bank closed early on September 11, 2001, the day of the terrorist attacks on the World Trade Center Twin Towers, he was unable to make his usual deposits to the trust account on that day. As the hearing court found, however, "the events of September 11, 2001 did not cause the shortfall in [the respondent's] account[; rather, it] merely caused the shortfall to be brought to [the respondent's] and Bar Counsel's attention."

Despite the NSF notice, the check that was the subject of the notice was honored by the bank.

which could not be located. And there was no evidence that the respondent benefitted from the shortfall. Moreover, the hearing court determined:

"8. After a thorough investigation by Bar Counsel, there was:

"a. No evidence of any theft of funds from the trust account by Respondent or anyone else;

"b. No evidence that Respondent had ever engaged in improper commingling of personal funds with trust funds;

"c. No evidence that any client or person for whom Respondent was holding funds suffered a loss directly as a result of the shortfall, or as a result of errors made by Respondent in his administration of the trust account; and

"d. No evidence or indication that any ongoing or additional errors were made in Respondent's trust account during the period examined, other than those stemming from the aforementioned shortfall."

The hearing court also made findings of fact in mitigation. One such factual finding was, as we have seen, the absence of any complaint by a client or a person for whom the respondent was holding funds. In addition, the hearing court noted that: the respondent's failure properly to administer and provide oversight of the trust account "[was] due to his lack of education, training and understanding regarding the proper administration and oversight of such accounts"; [9] the respondent expressed remorse and regret concerning the errors he made in administering the trust account; [10] and that he has taken steps to address the deficient administration of the account.[11]

---

9. The hearing court acknowledges that the respondent believed, wrongly, as the events under review has convinced him, that he was properly overseeing and administering the trust account.

10. Specifically, the hearing court is satisfied that:
 "Respondent now understands how these errors exposed his clients to risk, and is grateful that these issues were discovered prior to any client losing funds as a result of the shortfall."

11. Those steps, as enumerated by the hearing court are:

The petitioner took no exceptions to the findings and conclusions of the hearing court, but it did file Petitioner's Recommendation for Sanction, in which it urged the respondent's indefinite suspension from the practice law, "with the right to apply for readmission in six months." In support of that recommendation, while conceding the respondent's cooperation with the petitioner in its investigation and that no client suffered loss, it points to the facts that: the respondent's deficient oversight of the trust account, including particularly his failure to reconcile it, "exposed his clients to risk,"; "Respondent paid the obligations he owed to clients with the funds he was supposed to maintain for other clients"; and the failure of reconciliation of the account "went on literally for decades." Another significant factor in the petitioner's recommendation is the length of time that elapsed between the respondent's becoming aware of the shortfall—"no later than May 2002"—

"a. Respondent now ensures that he is personally familiar with every settlement check and all other funds received for deposit into his trust account. Similarly Respondent is personally familiar with all checks disbursing funds from the trust account to clients and other payees.

"b. Respondent telephones the bank on a daily basis to verify any and all activity occurring in the trust account on that day. Because Respondent is personally familiar with all deposits into the account and disbursements from the account, the daily telephone inquiry serves as a safeguard that no errors occur and, alternatively, that any errors are discovered and rectified immediately.

"c. Respondent reviews the monthly bank statement received from the bank with regard to the trust account, and personally reviews all returned checks accompanying that statement. Thereafter, Respondent provides the checks and bank statement to staff for the purpose of confirming that the amounts reflected on the checks are accurately reflected on the bank statements. Thereafter, the checks and bank statements, and any other necessary documents, are forwarded to Respondent's certified public accountant, who has been engaged to perform a reconciliation of the trust account on a monthly basis.

"d. Respondent testified that he plans to attend the Solo and Small Firm Conference program put on by MICPEL and the Maryland State Bar Association on November 15, 2003. If Respondent is, for some reason, unable to attend this program, he intends to purchase the course materials and/or videotapes and review them thoroughly. In addition, Respondent has instructed all of the attorneys in his office to also either attend or review the course materials."

and the account being brought into balance—"January 8, 2003."

In addition, the petitioner relies on our recent attorney discipline cases, in which a violation of rule 1.15(a) was found, but in which there was no finding of intentional misappropriation. *See Attorney Grievance Comm'n v. Seiden*, 373 Md. 409, 818 A.2d 1108 (2003); *Attorney Grievance Comm'n v. McClain*, 373 Md. 196, 817 A.2d 218 (2003); *Attorney Grievance Comm'n v. DiCicco*, 369 Md. 662, 802 A.2d 1014 (2002); *Attorney Grievance Comm'n v. Jeter*, 365 Md. 279, 778 A.2d 390 (2001). In these cases, sanctions ranging from a thirty (30) day suspension, *McClain*, 373 Md. at 212, 817 A.2d at 228, to an indefinite suspension with the right to apply for readmission within six (6) months, *Jeter*, 365 Md. at 293–94, 778 A.2d at 398, were imposed. In *Seiden*, the sanction was an indefinite suspension with the right to apply for readmission in thirty (30) days, 373 Md. at 425, 818 A.2d at 1117, and, in *DiCicco*, an indefinite suspension with the right to apply for readmission after ninety (90) days. 369 Md. at 688, 802 A.2d at 1028. Citing *Seiden* for the proposition that an attorney's prior grievance history, including the nature of the misconduct involved and the sanction imposed, is a proper consideration in determining the appropriate sanction, 373 Md. at 422, 818 A.2d at 1115–16, the petitioner points out that the respondent has thrice been sanctioned for misconduct: he was reprimanded in 1983 for a violation of DR 7–102(B)(1) of the Code of Professional Responsibility,[12] *see Attorney Grievance Comm'n v. Sperling*, 296 Md. 558, 463 A.2d 868 (1983); he was issued a private reprimand by the Review Board in 1998 for failing to notify medical services providers as required by Rule 1.15(b);[13] and he was reprimanded in 1999 for violating Rule

---

12. DR 7–102(B)(1) of the Code of Professional Responsibility provided:
"A lawyer who receives information clearly establishing that:
"(1) His client has, in the course of the representation, perpetrated a fraud upon a person or tribunal shall promptly call upon his client to rectify the same, and if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal."

13. Rule 1.15(b) provides:

1.15 in connection with a disputed claim to funds in his possession.

Like the petitioner, the respondent took no exceptions from the findings of fact or conclusions of law. He does, however, take exception to the petitioner's recommendation of a sanction. As to it, he responds:

> "The Petitioner has made a recommendation which, the Respondent respectfully submits, is far more severe than warranted in light of certain of the Findings of Fact made by the trial judge; far more severe than warranted when compared to the facts and sanctions involved in other decisions of this Court; and far more severe than is necessary to achieve the ultimate goal of these proceedings, to protect the public. In fact, a suspension will in all likelihood irreparably damage the Respondent's ability to maintain his practice in the future, thereby severely punishing him for his unintentional actions."

The respondent believes, and therefore recommends that he, once again, be reprimanded, despite his history of three prior disciplinary matters. He submits that the three reprimands he received in those matters are either too remote, (one was issued more than twenty (20) years ago), or not sufficiently similar to the present violation, as to require a different, more severe sanction. Regarding his argument that the present violation lacks similarity to his prior reprimands, the respondent asserts that the reprimands issued in 1998 and 1999, involving the timeliness of the payment of funds held in his trust account to lienholders following settlement of a case, "resulted from conduct completely unrelated to the adminis-

---

"(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

tration and management of the account as was involved in the present case."

In support of his sanction recommendation, the respondent directs our attention to "several unique aspects of the facts of this case that are relevant to the determination of an appropriate sanction, and that weigh in favor of a lesser sanction than this Court has historically imposed in cases involving trust account violations." He identifies five such facts. The first is the absence of any evidence of theft, by the respondent or anyone else, of the trust funds and, the respondent adds, the petitioner "did not even allege or charge [him] with any dishonest act or conduct." Second, the respondent points to the absence of any evidence that he had ever engaged in any improper commingling of personal and trust funds or that he had personally benefitted from the shortage in the trust account. That no complaints have been made against him by a client or a third person for whom the respondent was holding funds and, so far as the record reveals, no one has suffered a loss as a result of the shortage, is to the respondent, yet another of the facts in his favor. Also relevant to the sanction, the respondent submits, is the fact that the shortfall could have been the result of as little as one isolated incident, occurring prior to January 1, 2001, that went undetected until after the events of September 11, 2001. Finally, the respondent reminds us that the hearing court determined that "the errors made by the Respondent in his administration and oversight of his trust account were due to his lack of education, training and understanding regarding the proper manner of performing those tasks,"and not willful sloppiness in account management.

Addressing the other factors that this Court has identified as appropriate considerations when deciding what sanction to impose in an attorney discipline case, *see Seiden,* 373 Md. at 422, 818 A.2d at 1115–16; [14] *DiCicco,* 369 Md. at 686, 802 A.2d

---

**14.** This Court stated in *Attorney Grievance Comm'n v. Seiden,* 373 Md. 409, 818 A.2d 1108 (2003) that " '[t]he nature and gravity of the violations and the intent with which they were committed' is relevant to

at 1028,[15] the respondent urges this Court to give ample weight to the hearing court's findings that: he was remorseful for, and regrets the errors he made in administering and overseeing his trust account; the respondent has taken steps to address the deficient administration and oversight of the trust account, concluding that, with those steps in place, recurrence is unlikely and discovery, in any event, will be more timely; the respondent made up the shortfall; the respondent provided full cooperation with the petitioner and its investigation; the respondent's knowledge concerning the administration and oversight of trust accounts was self taught; and the respondent maintains strong ties to the local legal community and the local community-at-large and contributes substantial pro bono assistance. The steps that the respondent has taken to prevent a recurrence of the trust account deficiency also is viewed, by the respondent, as interim rehabilitation, another of the factors that this Court has indicated mitigates a disciplinary sanction.

 Our task is to determine the appropriate sanction to be imposed in this case, there being no issue as to whether the respondent violated the rules charged. We approach that task

---

the sanctioning process." *Id.* at 422, 818 A.2d at 1115, quoting *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997).

**15.** In *Attorney Grievance Comm'n v. DiCicco,* 369 Md. 662, 686–87, 802 A.2d 1014, 1028(2002), this Court identified the following as factors to be considered in imposing an appropriate sanction in an attorney discipline matter:

" '[A]bsence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.' "

(quoting *Attorney Grievance Comm'n v. Dunietz,* 368 Md. 419, 430, 795 A.2d 706, 711 (2002)) (quoting *Attorney Grievance Comm'n v. Jaseb,* 364 Md. 464, 481–82, 773 A.2d 516, 526 (2001))(quoting *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 488–89, 671 A.2d 463, 483 (1996)).

with the purpose served by imposition of a sanction in an attorney discipline case firmly in mind: to protect the public rather than to punish the erring attorney, as well as to promote general and specific deterrence. *Awuah, supra,* 346 Md. at 435, 697 A.2d at 454 (1997); *Attorney Grievance Comm'n of Maryland v. Myers,* 333 Md. 440, 446–47, 635 A.2d 1315, (1994); *Attorney Grievance Comm'n v. Protokowicz,* 329 Md. 252, 262–63, 619 A.2d 100, 105 (1993). We have elaborated:

> "We have recognized that the public interest is served when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated.... Moreover, such a sanction represents the fulfillment by this Court of its responsibility 'to insist upon the maintenance of the integrity of the bar and to prevent the transgression of an individual lawyer from bringing its image into disrepute.' ... Therefore, the public interest is served when sanctions designed to effect general and specific deterrence are imposed on an attorney who violates the disciplinary rules.... Of course, what the appropriate sanction for the particular misconduct is, in the public interest, generally depends upon the facts and circumstances of the case.... The attorney's prior grievance history, as well as facts in mitigation, constitute part of those facts and circumstances."

*Myers,* 333 Md. at 447, 635 A.2d at 1318, quoting *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 549, 318 A.2d 811, 814 (1974) (citations omitted).

In this State, it is well settled that the sanction for misappropriation of client funds or funds entrusted to a lawyer is, in the absence of compelling extenuating circumstances justifying a lesser sanction, disbarment, because misappropriation "is an act infected with deceit and dishonesty." *Attorney Grievance Comm'n v. Spery,* 371 Md. 560, 568, 810 A.2d 487, 491–92 (2002). *See Attorney Grievance Comm'n v. Smith,* 376 Md. 202, 238, 829 A.2d 567, 588–89 (2003); *Attorney Grievance Comm'n v. Sullivan,* 369 Md. 650, 655–56, 801 A.2d 1077, 1080 (2002); *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md.

376, 410, 773 A.2d 463, 483 (2001); *Bar Ass'n v. Marshall,* 269 Md. 510, 520, 307 A.2d 677, 682 (1973). "Where there is no finding of intentional misappropriation, however, and where the misconduct did not result in financial loss to any of the respondent's clients, an indefinite suspension ordinarily is the appropriate sanction." *DiCicco,* 369 Md. at 687, 802 A.2d at 1028; *see Seiden,* 373 Md. at 424–25, 818 A.2d at 1117; *Jeter,* 365 Md. at 293, 778 A.2d at 398; *Awuah,* 346 Md. at 435–36, 697 A.2d at 454. Therefore, we recognize that, while ignorance does not excuse a violation of disciplinary rules, a finding with respect to the intent with which a violation was committed is relevant to the appropriate sanction and consistent with the purpose of a disciplinary proceeding. *Awuah,* 346 Md. at 435–36, 697 A.2d at 454.

The violations that the respondent has been found to, and in fact concedes to have committed are quite serious. As the petitioner notes and the respondent also concedes, a shortfall in an attorney's trust account, and in particular one so large, places clients and others whose funds are being held at some considerable risk. To be sure, no one suffered as a result of the shortfall and the findings of fact and conclusions of law of the hearing court, particularly as they relate to the cause of the violations and the intent with which they were committed, are most favorable to the respondent. On the other hand, as the petitioner points out, we must consider that the respondent has been reprimanded for disciplinary violations in the past and that the respondent acted with significant delay in bringing the trust account to balance.

While the cases cited by the parties are instructive, the facts and circumstances in those cases, and their relationship to the relevant court's determination of the appropriate sanction to be applied are not directly apposite to the case *sub judice.* In none of those cases had the attorney previously been disciplined. Nevertheless, neither did the Court in those cases issue only a reprimand, as the respondent would have us do in this matter. This Court acknowledges that the present case was not the result of a complaint, but it is also true that in none of the cited cases was there as large a shortfall. More-

over, in *DiCicco,* the attorney's lack of a disciplinary history was specifically noted as a basis for the sanction in that case, indefinite suspension with the right to reapply in 90 days.

In *Attorney Grievance Comm'n v. Culver,* 371 Md. 265, 283–84, 808 A.2d 1251, 1261–62 (2002), this Court imposed as a sanction, an indefinite suspension with the right to reapply in 30 days on a lawyer who violated Maryland Rules 1.5(c) and 16–607(b)(2), pertaining to the handling of contingent fees and commingling funds, respectively, and who had previously been reprimanded for failing to communicate with his client and to act diligently with regard to the client matter. *See Attorney Grievance Comm'n v. Adams,* 349 Md. 86, 98–99, 706 A.2d 1080, 1086 (1998) (indefinite suspension with the right to reapply in 30 days for violations of MRPC 1.15 and Rule 16–604 when the violations were the attorney's first involvement in the disciplinary system).

Under all of the circumstances of this case, we conclude that the appropriate sanction is an indefinite suspension from the practice of law with the right to apply for readmission to the bar after ninety days.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST LEONARD J. SPERLING.