*Attorney Grievance Commission of Maryland v. Larry D. Hunt*, Misc. Docket AG No. 90, September Term, 2014. Opinion by Hotten, J.

**ATTORNEY DISCIPLINE – ATTORNEY MISCONDUCT –** The Respondent, Larry D. Hunt, violated Rules 1.1, 1.3, 1.4, 5.5(a) and (b), 8.1(a), and 8.4(a), (b), (c), and (d) of the Maryland Lawyers' Rules of Professional Conduct. A 60 day suspension from the practice of law is the appropriate sanction for a non-Maryland attorney that represented a criminal defendant on a *pro bono* basis in Maryland District Court, and made a false statement to Bar Counsel about his *pro hac vice* admission to the Maryland Bar.

Circuit Court for Prince George's County, Maryland
Case No. CAE15-13637
Argued: March 4, 2016

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 90

September Term, 2014

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

LARRY D. HUNT

_____

Barbera, C.J.,
*Battaglia,
Greene,
Adkins,
McDonald,
Watts,
Hotten,

JJ.

_____

Opinion by Hotten, J.

_____

Filed:  April 22, 2016

*Battaglia, J., now retired, participated in the
hearing and conference of this case while an
active member of this Court; after being recalled
pursuant to the Constitution, Article IV, Section
3A, she also participated in the decision and
adoption of this decision.

This attorney discipline proceeding involves a lawyer who was only licensed to practice in the District of Columbia, yet represented a defendant *pro bono* for a criminal proceeding in a Maryland District Court, sitting in Prince George's County ("District Court"), and made a false statement to Bar Counsel regarding his *pro hac vice* admission to the Maryland Bar.

Larry D. Hunt ("Respondent") was admitted to the Bar of the District of Columbia on November 1, 1999, and at all times relevant to this case, maintained a law office in Washington, D.C.[1]

The Attorney Grievance Commission of Maryland ("Petitioner"), filed a Petition for Disciplinary or Remedial Action against Respondent on February 27, 2015. Petitioner requested that this Court take appropriate disciplinary action against Respondent for violating the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") (Md. Rule 16-812) during his unauthorized representation of Jaimel Fatin Peace ("Mr. Peace") in the District Court. Petitioner alleged violations of MLRPC 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 5.5 (Unauthorized Practice of Law, Multijurisdictional Practice of Law), 8.1 (Bar Admission and Disciplinary Matters), and 8.4 (Misconduct).

This Court, by an order dated March 17, 2015, transmitted the action to the Circuit Court for Prince George's County, and designated the Honorable Albert W. Northrop ("the hearing judge") to enter findings of fact and conclusions of law. On November 2, 2015, a hearing was held, and on November 25, 2015, the hearing judge issued Findings of Fact

---

[1] Respondent no longer maintains a law office.

and Conclusions of Law. The hearing judge found that Respondent violated MLRPC 1.1, 1.3, 1.4, 5.5(a) and (b), 8.1(a), and 8.4(a), (b), (c), and (d).

On March 4, 2016, we heard oral argument. For the reasons outlined below, we uphold the hearing judge's Findings of Fact and Conclusions of Law, and order that Respondent be suspended from the practice of law for 60 days.

## I.   BACKGROUND

### a.   The hearing judge's findings of fact

The hearings judge's findings of fact, beginning with Respondent's representation of Mr. Peace, were as follows:

> On March 13, 2013, Jaimel Fatin Peace ("Mr. Peace") was arrested for possession of controlled dangerous substances ("CDS") – not marijuana. On April 8, 2013, Respondent appeared on Mr. Peace's behalf for a preliminary hearing … in the District Court for Prince George's County. Respondent represented Mr. Peace on a *pro bono* basis. During the April 8, 2013, hearing, Respondent filed a Motion to Dismiss on Mr. Peace's behalf as his attorney. Respondent's Motion to Dismiss did not contain a Certificate of Service. During the April 8, 2013, preliminary hearing, the court set Mr. Peace's criminal hearing for June 27, 2013. On or about June 11, 2013, Respondent filed a "Motion to Withdraw as Counsel for Defendant" in Mr. Peace's case. Respondent's Motion to Withdraw did not contain a Certificate of Service. On June 12, 2013, Respondent's Motion to Withdraw was denied because it did not have a Certificate of Service. Mr. Peace's criminal proceeding occurred on June 27, 2013. Although Respondent was still counsel of Record for Mr. Peace, he was not present during the June 27, 2013 hearing.
>
> On July 2, 2013, the Honorable Thomas J. Love issued a Show Cause Order for Respondent to appear before him in court on August 29, 2013 due to Respondent's failure to appear at the June 27, 2013 hearing. Judge Love also rescheduled Mr. Peace's criminal hearing for August 29, 2013. On or about July 24, 2013, Respondent filed a Motion to request that the court dismiss the Show Cause order and grant his Motion to Withdraw from Mr.

Peace's case. Respondent's Certificate of Service for his July 24, 2013 Motion listed Mr. Peace's address instead of opposing counsel's address. On or about August 6, 2013, the court denied Respondent's July 24, 2013 Motion. Respondent failed to appear at the Show Cause hearing scheduled on August 29, 2013.

On October 3, 2013, Judge Love filed a complaint with the Attorney Grievance Commission- Office of Bar Counsel.

On December 13, 2013, Bar Counsel wrote to Respondent stating *inter alia*, "If you are not a Maryland Attorney, please advise this office whether you were admitted *pro hac vice* in the underlying matter of *State v. Jaimel Fatin Peace*." On February 4, 2014, Respondent sent Bar Counsel a response to its December 13, 2013 letter. Respondent stated in his February 4, 2014 letter: "However, please be advised that I am not an attorney licensed in Maryland, but was being admitted *pro hac vice* in the underlying matter of *State v. Jaimel Fatin Peace* before Mr. Peace informed me that he [sic] longer wanted me to repr[e]sent him in the above-referenced matter."

Respondent testified in his deposition for this matter that he contacted Maryland attorney Bruce Johnson, Esquire sometime during mid-2013 concerning Mr. Johnson sponsoring his *pro hac vice* admission to Maryland. However, Respondent failed to take any discernable steps to file a *pro hac vice* motion in Maryland before representing Mr. Peace.

Citations omitted.

### b. The hearing judge's conclusions of law

Based on the above findings of fact, the hearing judge concluded that Respondent violated MLRPC 1.1, 1.3, 1.4, 5.5(a) and (b), 8.1(a), and 8.4(a), (b), (c), and (d).

### Rule 1.1

MLRPC 1.1 requires that "[a] lawyer … provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The hearing judge concluded that

"Respondent's admitted ignorance of the Maryland Rules and repeated errors in filing his Motions violated [MLRPC] 1.1." The hearing judge observed that Respondent had filed motions lacking certificates of service, and failed to send the motions to opposing counsel.

The hearing judge also noted that "Respondent testified in his deposition that he believed his appearance in Mr. Peace's case had essentially been struck once he filed a Motion to Withdraw with the District Court." Respondent was obviously mistaken, and according to the hearing judge, Respondent had a duty to "keep abreast of changes in the law and its practice," *see* comment 6 to MLRPC 1.1, yet Respondent "had little to no knowledge of the Maryland Rules because he was not admitted to the Maryland Bar." The hearing judge opined that "[c]laimed ignorance of ethical duties… is not a defense in disciplinary proceedings." (quoting *Attorney Grievance Comm'n v. Awuah*, 346 Md. 420, 435, 697 A.2d 446, 454 (1997)).

## Rule 1.3

MLRPC 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." The hearing judge concluded that, because the District Court denied Respondent's Motion to Withdraw as Counsel for Mr. Peace, Respondent violated MLRPC 1.3 by failing to attend the June 27, 2013 hearing. The hearing judge also concluded that MLRPC 1.3 was violated by Respondent's failure to attend the August 29, 2013, show cause hearing.

## Rule 1.4

MLRPC 1.4(a)(2) requires that a lawyer "keep [his] client reasonably informed about the status of the matter[.]" The hearing judge concluded that Respondent violated

MLRPC 1.4(a)(2) by not informing Mr. Peace that Respondent was still counsel of record on June 27, 2013, the day of Mr. Peace's criminal hearing. While Mr. Peace allegedly terminated Respondent's representation on April 8, 2013, Respondent remained counsel of record because the District Court denied his Motion to Withdraw.

## Rule 5.5[2]

MLRPC 5.5(a) prohibits an attorney from engaging in the practice of law "in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction[.]" In determining "whether an individual has engaged in the practice of law, the focus of the inquiry should be on whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent." *Attorney Grievance Comm'n v. Hallmon*, 343 Md. 390, 397, 681 A.2d 510, 514 (1996). MLRPC 5.5(b)(2) provides that "[a] lawyer who is not admitted to practice in this jurisdiction shall not … hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction."

---

[2] MLPRC 5.5 provides:

(a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

(b) A lawyer who is not admitted to practice in this jurisdiction shall not:

(1) except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or

(2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.

The hearing judge found that Respondent's representation of Mr. Peace required "legal knowledge and skill[,]" and was therefore prohibited by MLRPC 5.5(a). The hearing judge noted that the Motion to Dismiss filed on Mr. Peace's behalf argued "that there was no probable cause and that the State violated [Mr. Peace's] Fourth Amendment rights by illegally searching and seizing his property[.]" According to the hearing judge, "Respondent's motions [were] replete with legal arguments that an attorney, not a lay person, would normally argue." The hearing judge also observed that Respondent held himself out as an attorney when he checked a box marked "attorney" in his Motion to Dismiss.[3]

---

[3] The hearing judge concluded that Respondent did not fit within any of the exceptions enumerated in MLRPC 5.5(b). This appears to be a misstatement, as the exceptions to the prohibitions in MLRPC 5.5(a) and (b) are contained in MLRPC 5.5(c) and (d):

> (c) A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that:

> (1) are undertaken in association with a lawyer who is admitted to practice in this jurisdiction and who actively participates in the matter;

> (2) are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized;

> (3) are in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice and are not services for which the forum requires *pro hac vice*

(continued…)

- 6 -

**Rule 8.1(a)**

MLRPC 8.1(a) prohibits a lawyer from "knowingly mak[ing] a false statement of material fact[]" in connection with a disciplinary matter. The hearing judge concluded that Respondent violated MLRPC 8.1(a) by informing Bar Counsel that he was "being admitted *pro hac vice* in the underlying matter of *State v. Jaimel Fatin Peace*[.]" The hearing judge noted that "Respondent never filed a *pro hac vice* motion in Mr. Peace's case."

**Rule 8.4**

MLRPC 8.4 provides, *inter alia*, that "[i]t is professional misconduct for a lawyer to:"

> (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

---

(…continued)
    admission; or

(4) are not within paragraphs (c)(2) or (c)(3) and arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice.

(d) A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services in this jurisdiction that:

(1) are provided to the lawyer's employer or its organizational affiliates and are not services for which the forum requires *pro hac vice* admission; or

(2) are services that the lawyer is authorized to provide by federal law or other law of this jurisdiction.

- 7 -

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice
…

The hearing judge concluded that Respondent violated each of the aforementioned subsections.

Regarding MLRPC 8.4(a), the hearing judge relied on the previously mentioned ethical violations.

Relative to MLRPC 8.4(b), the hearing judge noted that the unauthorized practice of law is prohibited by Md. Code (1989 Repl. Vol. 2010), § 10-601(a) of the Business Occupations and Professions Article ("Bus. Occ. & Prof."). Bus. Occ. & Prof. § 10-602 also prohibits a person not barred in Maryland from "represent[ing] to the public, by use of a title, including 'lawyer', 'attorney at law', or 'counselor at law', by description of services, methods, or procedures, or otherwise, that the person is authorized to practice law in the State." The hearing judge concluded that Respondent violated § 10-601(a) and § 10-602 by "representing Mr. Peace at his preliminary hearing, filing motions on his behalf, and otherwise engaging in the unauthorized practice of law[.]" Such violations are classified as misdemeanors, thus Respondent's representation of Mr. Peace was a criminal violation.[4] *See* Bus. Occ. & Prof. § 10-606.

---

[4] Although the hearing judge did not find that Respondent's criminal conduct
(continued…)

Regarding MLRPC 8.4(c), the hearing judge found that Respondent's statement to Bar Counsel – that he was "being admitted *pro hac vice* in the underlying matter of *State v. Jaimel Fatin Peace*" – involved "dishonesty, fraud, deceit or misrepresentation." MLRPC 8.4(c). As discussed in the factual findings, Respondent never filed a *pro hac vice* motion.

Concerning MLRPC 8.4(d), the hearing judge described conduct prejudicial to the administration of justice as follows:

> Behavior that may seriously impair public confidence in the entire profession, without extenuating circumstances, may be conduct prejudicial to the administration of justice. *See Attorney Grievance v. Childress*, 360 Md. 373, 381, 758 A.2d 117, 121 (2000). An attorney's material misrepresentation to the client, his failure to act on the client's case for over three years and failure to expedite litigation, to the client's detriment, is conduct prejudicial to the administration of justice. Failure to represent a client in an adequate manner and lying to a client constitute a violation of Rule 8.4(d).

---

(…continued)

"reflect[ed] adversely on [his] honesty, trustworthiness or fitness as a lawyer[,]" MLRPC 8.4(b), we have previously ruled that the unauthorized practice of law, in contravention of the Business Occupations & Professions Article, is sufficient to establish a violation of MLRPC 8.4(b):

> A finding that Respondent violated MLRPC 5.5 supports the conclusion, by clear and convincing evidence, that Respondent also violated the unauthorized practice provisions of the Business Occupations and Professions Article. [*Attorney Grievance Comm'n v. Tanko,* 427 Md. 15, 47 45 A.3d 281, 300 (2012)] ("Because unauthorized practice of law is unquestionably a 'criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects,' there is clear and convincing evidence that Respondent violated M[L]RPC 8.4(b)."). Therefore, by virtue of Respondent's violation of Rule 5.5, Respondent also violated Rule 8.4(b) of the MLRPC.

*Attorney Grievance Comm'n of Maryland v. Gerace*, 433 Md. 632, 645-46, 72 A.3d 567, 575 (2013).

(quoting *Attorney Grievance Comm'n of Maryland v. Reinhardt*, 391 Md. 209, 222, 892 A.2d 533, 540-41 (2006)). The hearing judge concluded that Respondent violated MLRPC 8.4(d) by 1) failing to provide competent representation, 2) failing to appear for the show cause hearing, and 3) assuming that the Motions to Withdraw were granted, or failing to exercise due diligence in ascertaining their status.

## Mitigating and Aggravating Circumstances

The hearing judge did not find any aggravating circumstances, and opined that there was "no evidence … to support any mitigating factors." Nonetheless, the hearing judge noted that Respondent was caring for his elderly mother in North Carolina for a portion of the summer of 2013. The hearing judge also observed that Respondent admitted the alleged violations.

## II. DISCUSSION

### a. Standard of Review

This Court must determine whether Bar Counsel proved the allegations in the disciplinary petition by clear and convincing evidence. *See* Md. Rule 16-757(b). In doing so, "[w]e accept a hearing judge's findings of fact unless we determine that they are clearly erroneous." *Attorney Grievance Comm'n v. Edib*, 415 Md. 696, 706, 4 A.3d 957, 964 (2010) (quoting *Attorney Grievance Comm'n v. Guida,* 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006)). Uncontested findings of fact may be accepted "as conclusively established." *Id.* at 707, 4 A.3d at 964 (citing Md. Rule 16-759(b)(2)(A) ("If no exceptions are filed, the Court may treat the findings of fact as established....")). However, "'[a]ll proposed conclusions of law by the hearing judge… are subject to *de novo* review by this

Court.'" *Id.* (quoting *Attorney Grievance Comm'n v. Thomas,* 409 Md. 121, 147, 973 A.2d 185, 201 (2009)).

## b. Exceptions

Neither party noted exceptions to the hearing judge's findings of fact or conclusions of law. Accordingly, we accept the findings of fact as established. *See Attorney Grievance Comm'n v. Good*, 445 Md. 490, 513, 128 A.3d 54, 67 (2015) (noting that "we shall accept the hearing judge's 'findings of fact as established for the purpose of determining appropriate sanctions'" where neither Petitioner nor Respondent noted any exceptions) (citing Md. Rule 16–759(b)(2)(A)). In addition, having reviewed the hearing judge's conclusions of law *de novo*, we agree that Petitioner demonstrated, by clear and convicting evidence, that Respondent violated MLRPC 1.1, 1.3, 1.4, 5.5(a) and (b), 8.1(a), and 8.4(a), (b), (c) and (d).

## c. This Court's sanction[5]

The purpose of this Court's sanction in an attorney discipline proceeding is to "protect the public rather than to punish the attorney…." *See, e.g., Attorney Grievance Comm'n v. Weiss*, 389 Md. 531, 547, 886 A.2d 606, 615 (2005) (citations omitted). In furtherance of this goal, we impose a sanction that "demonstrates to members of the legal

---

[5] "[N]on-Maryland attorneys engaging in the unauthorized practice of law… can be sanctioned by this Court." *Attorney Grievance Comm'n v. Shephard*, 444 Md. 299, 339, 119 A.3d 765, 788-89 (2015) (citing MLRPC 8.5(a)(2) ("A lawyer not admitted to practice in this State is also subject to the disciplinary authority of this State if the lawyer (i) provides or offers to provide any legal services in this State, [or] (ii) holds himself or herself out as practicing law in this State[.] …")).

profession the type of conduct that will not be tolerated…." *Attorney Grievance Comm'n v. Sperling*, 380 Md. 180, 191, 844 A.2d 397, 404 (2004) (quoting *Attorney Grievance Comm'n v. Myers*, 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994)). To determine the appropriate sanction, we consider the facts and circumstances of an individual case, "the nature of the ethical duties violated," and "any aggravating or mitigating circumstances." *Attorney Grievance Comm'n v. Shephard*, 444 Md. 299, 339, 119 A.3d 765, 788 (2015) (citing *Attorney Grievance Comm'n v. Paul*, 423 Md. 268, 284, 31 A.3d 512, 522 (2011)).

Petitioner requests that this Court indefinitely suspend Respondent from the practice of law. According to Petitioner, Respondent's unauthorized practice of law (MLRPC 5.5), along with his misrepresentations to Bar Counsel and the District Court (MLRPC 8.1(a) and 8.4), warrant such a sanction. In contrast, Respondent proposes a 30 day suspension. In seeking their respective sanctions, both Petitioner and Respondent rely on *Attorney Grievance Comm'n v. Harris-Smith*, 356 Md. 72, 737 A.2d 567 (1999), where we imposed a 30 day suspension for the unauthorized practice of law by a non-Maryland attorney, and *Attorney Grievance Comm'n v. Barneys*, 370 Md. 566, 805 A.2d 1040 (2002), where we imposed disbarment. However, as explained below, the misconduct in *Barneys* and the misconduct in *Harris-Smith* represent opposite ends of the unauthorized practice spectrum, with Respondent's conduct falling in between. Because Respondent's misconduct was not as egregious as that involved in *Barneys*, yet slightly more culpable than that involved in *Harris-Smith*, we shall suspend Respondent from the practice of law for 60 days.

In *Attorney Grievance Comm'n v. Harris-Smith*, Ms. Harris-Smith maintained a law office in Maryland, with several Maryland attorneys as partners. 356 Md. at 74, 737 A.2d

- 12 -

at 568. However, Ms. Harris-Smith was only licensed to practice in the United States District Court for the District of Maryland and several out-of-state jurisdictions. *Id.* In violation of MLRPC 5.5(a), Ms. Harris-Smith performed screening interviews with potential Maryland clients who called her law office, and engaged in the practice of law by providing legal advice based on the facts presented. *Id.* at 77, 737 A.2d at 570; *see Hallmon,* 343 Md. at 397, 681 A.2d at 514 (stating that, when determining whether an attorney engaged in the practice of law, "the focus of the inquiry should 'be on whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent.'") (citation omitted). Ms. Harris-Smith also violated MLRPC 5.5(b) by holding herself out as a Maryland attorney through her business card and radio advertisements, which "failed to disclose that her practice was limited to bankruptcy law and the [federal district court]." *Harris-Smith*, 356 Md. at 78, 737 A.2d at 570.

In imposing a sanction for Ms. Harris-Smith's unauthorized practice of law, we recognized several factors justifying a lesser sanction. We first observed that the hearing judge found in favor of Ms. Harris-Smith on the alleged violations of MLRPC 8.4(b) and (c) (Misconduct), which are "serious violations going to the attorney's integrity." *Id.* at 90, 737 A.2d at 577. We also observed that Ms. Harris-Smith made several attempts "to practice within the limits of her admission to the bar of the federal district[,]" by referring clients requiring representation in Maryland state courts to her partners, appearing only on behalf of those clients with bankruptcy matters in federal district court, and by including her jurisdictional limitation on her law firm's letterhead. *Id.* at 78, 90, 737 A.2d at 570, 577. We reasoned that Ms. Harris-Smith's case was distinguishable from those where we

imposed disbarment, because those cases presented "purely a territorial issue, with no federal overlay" – *i.e.*, the Respondents in those cases was not barred in Maryland or the U.S. District Court for the District of Maryland. *Id.* at 91, 737 A.2d at 577 (discussing *Attorney Grievance Comm'n v. Harper*, 356 Md. 53, 737 A.2d 557 (1999) and *Attorney Grievance Comm'n v. James*, 353 Md. 681, 728 A.2d 697 (1999)). Lastly, regarding our goal of deterring future misconduct, we noted that Ms. Harris-Smith had dissolved her Maryland practice, and maintained an office in the District of Columbia where she was licensed to practice. *Id.* at 90-91, 737 A.2d at 577. We therefore imposed a 30 day suspension from the practice of law.[6] *Id.* at 90, 737 A.2d at 577.

*Attorney Grievance Comm'n v. Barneys*, also involving a non-Maryland attorney, stands in stark contrast to *Harris-Smith*. In that case, Mr. Barneys violated MLRPC 5.5(b) by establishing the "Law Offices of Bradford J. Barneys, P.C." in Maryland, and referencing his practice as such in his letterhead, business cards, and signage at his office. *Barneys*, 370 Md. at 571, 805 A.2d at 1043. While Mr. Barney's application to the Maryland Bar was pending, he also committed several violations of MLRPC 5.5(a) by representing five clients in the District Court, and the Circuit Court for Prince George's County. *Id.* at 572, 805 A.2d at 1043.

In addition to his unauthorized practice of law, Mr. Barneys made several false statements in violation of MLRPC 8.1(a):

---

[6] We also affirmed the hearing judge's finding that Ms. Harris-Smith violated MLRPC 7.1 (Communications Concerning a Lawyer's Services) and 7.5 (Firm Names and Letterheads) by failing to advise clients that she was not admitted to practice in Maryland, and using a business card that listed a Maryland address.

[Mr. Barneys] made a false statement on his Petition for Admission to the Maryland Bar-representing that he practiced only in the District of Columbia, when he actually had an office in Maryland and was engaging in the unauthorized practice of law; [Mr. Barneys] told [Bar Counsel's] investigator that he had only one Maryland client; and [Mr. Barneys] entered his appearance, without special permission and while not a Maryland lawyer, … and otherwise represented those clients.

*Id.* at 574, 805 A.2d at 1044.

We also observed that Mr. Barneys violated MLRPC 8.4(b), (c), and (d), by making a material misrepresentation to a bail bonds company in securing the bond of one of his clients, and by being "deceitful and dishonest to the judges of the District and Circuit Courts of Prince George's County by entering his appearance on behalf of clients when he knew that he was not authorized to practice law in the state of Maryland." *Id.* Regarding the bail bonds company, we noted that a Mr. Sanchez, Mr. Barneys' client, was detained on a $150,000 bond pending CDS violations. *Id.* at 572, 805 A.2d at 1043. To secure Mr. Sanchez's bond, Mr. Barneys proposed that Gates Bail Bonds "'accept an assignment of Mr. Sanchez's workers' compensation settlement proceeds,'" and in return, post Mr. Sanchez's bond. *Id.* When an agent of Gates Bail Bonds agreed to this arrangement, "[Mr. Barneys] provided a document titled 'Assignment of Settlement Proceeds,' which was signed by [Mr. Barneys] and purportedly Mr. Sanchez." *Id.* However, Mr. Barneys did not represent Mr. Sanchez in the workers' compensation matter, and the attorney who did represent Mr. Sanchez was entirely unaware of this agreement. *Id.* at 572-73; 805 A.2d at 1043. As a result, the bail bonds company forfeited the posted bond because Mr. Sanchez received the settlement proceeds from the other attorney, and did not contact Gates Bail Bonds or appear for trial. *Id.* at 573; 805 A.2d at 1043.

In determining the appropriate sanction, we observed that Mr. Barneys' misconduct was distinguishable from *Harris-Smith*. First, we noted that Ms. Harris-Smith never represented a client in a Maryland court, whereas Mr. Barneys did so on at least five occasions. *Id.* at 589, 805 A.2d at 1053. Second, contrary to the federal overlay involved in *Harris-Smith*, there was no plausible reason why Mr. Barneys would have believed that he was permitted to establish a law office in Maryland. *Id.* Third, Ms. Harris-Smith had attempted to practice within her jurisdictional limits and "ceased to hold herself out as a Maryland attorney when she corresponded with the [her] firm's clients," because Ms. Harris-Smith's letterhead disclosed her jurisdictional limitation. *Id.* at 590, 805 A.2d at 1053. To the contrary, Mr. Barneys "held himself out as an authorized Maryland attorney by means of his business cards, his letterhead, and signs in the building immediately outside his office suite." *Id.* at 590, 805 A.2d at 1053.

We also discussed our sanctions in several attorney discipline matters involving the unauthorized practice of law – including *Attorney Grievance Comm'n v. Harper*, 356 Md. 53, 737 A.2d 557 (1999), and *Attorney Grievance Comm'n v. Johnson*, 363 Md. 598, 770 A.2d 130 (2001) – where we imposed disbarment. In *Harper*, we observed that Mr. Harper, a District of Columbia barred attorney, had engaged in "deliberate and persistent" violations of MLRPC 5.5(a) by setting up a law office in Baltimore City "'to wring whatever value he could out of the inventory of pending cases of a disbarred lawyer….'" *Barneys*, 370 Md. at 584-85, 805 A.2d at 1050 (quoting *Harper*, 356 Md. at 70, 737 A.2d at 566). We noted that Mr. Harper's motivation to establish this Baltimore law office was simply greed. *Id.* (quoting *Harper*, 356 Md. at 70, 737 A.2d at 566).

We also discussed *Attorney Grievance Comm'n v. Johnson*, 363 Md. 598, 770 A.2d 130 (2001), where Mr. Johnson was barred in the District of Columbia and Virginia, but established a Maryland law office with a partner who was barred in Maryland. *Barneys*, 370 Md. at 585, 805 A.2d at 1050 (citing *Johnson*, 363 Md. at 625, 770 A.2d at 146). We observed that Mr. Johnson met with and advised clients in his Maryland office, and misled the public and his clients by neglecting to include his jurisdictional limitations on his letterhead. *Id.* at 585, 805 A.2d at 1051 (citing *Johnson*, 363 Md. at 631, 770 A.2d at 150). We also observed that Mr. Johnson violated MLRPC 8.4(a), (b), and (c) by forging the signatures of a Maryland couple on a bankruptcy petition, which he filed without the couple's knowledge. *Id.* (citing *Johnson*, 363 Md. at 631, 770 A.2d at 150).

We concluded that Mr. Barneys' conduct was most similar to those cases where we imposed disbarment:

> Overall, our review of the unauthorized practice cases resulting in disbarment leads us to believe that they have more elements in common with [Mr. Barneys'] case than does his case with *Harris-Smith*. For example, although Harper seemed to have represented many more clients than [Mr. Barneys], the cases share at least two common features. First, both attorneys held themselves out as admitted in Maryland, in violation of M[L]RPC 7.5.[7] In

---

[7] MLRPC 7.5 provides, *inter alia*:

(a) A lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1. A trade name may be used by a lawyer in private practice if it does not imply a connection with a government agency or with a public or charitable legal services organization and is not otherwise in violation of Rule 7.1.

(b) A law firm with offices in more than one jurisdiction may use the same

(continued . . .)

fact, one of Harper's regular letterheads indicated his jurisdictional practice limitations, while none of [Mr. Barneys'] letterheads did. Second, the description of the misconduct as "deliberate and persistent," relied on by this Court in *Harper* … and cited again in *Johnson,* appears to be an apt description of [Mr. Barneys'] conduct, wrongfully representing five clients in Maryland state court proceedings and pretending to represent [Mr.] Sanchez in a workers' compensation matter when he did not.

[Mr. Barneys'] conduct regarding Mr. Sanchez also highlights his deceptive tendencies, making his case like *Johnson,* where we found the attorney "repeatedly engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation." Both Johnson and [Mr. Barneys] forged signatures of purported clients, and both caused significant damage to third parties; in [Mr. Barneys'] case, the losses incurred by Gates Bail Bonds[].

In addition, whether the facts of a particular case sustain related or companion violations of M[L]RPC 8.4 seems also to be an influencing factor in our choice of sanction in at least some of the unauthorized practice cases under M[L]RPC 5.5(a). Specifically, in *Harris-Smith* we found that the attorney's conduct did not reach the level of a M[L]RPC 8.4 violation, which "would be [a] serious violation going to the attorney's integrity." By comparison, Harper was found in violation of M[L]RPC 8.4(b) and (d), and Johnson in violation of M[L]RPC 8.4(a), (c), and (d). Both were attorneys who, like [Mr. Barneys], had not been admitted in Maryland previously, and who, like [Mr. Barneys], undertook actual representation of clients in

---

(. . . continued)

> name in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located.
>
> …

MLRPC 7.1 provides, *inter alia*:

> A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:
>
> (a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;
>
> …

> Maryland state court matters. Because [Mr. Barneys] violated M[L]RPC 8.4(b), (c), and (d), violations that are arguably more serious than in either *Harper*[] or *Johnson,* we should not shy away from disbarment.

*Id.* at 591-92, 805 A.2d at 1054.

Turning to the case at bar, Respondent's misconduct is meaningfully distinguishable from the misconduct in *Barneys*, and in some ways, less egregious than the misconduct in *Harris-Smith*. First, Respondent's representation was isolated to one client in the District Court, whereas both Ms. Harris-Smith and Mr. Barneys regularly engaged in the unauthorized practice of law. *Cf. Attorney Grievance Comm'n of Maryland v. Lawson*, 401 Md. 536, 583, 933 A.2d 842, 869 (2007) (noting that an aggravating factor considered by this Court in imposing a sanction is "a pattern of misconduct[.]"). Second, Respondent never held himself out as a Maryland attorney through advertisements, business cards, stationery, or a Maryland law office, as was the case in both *Barneys* and *Harris-Smith*. *See Barneys,* 370 Md. at 591, 805 A.2d at 1054 (2002) (noting that, in cases where this Court has imposed disbarment, the attorney held himself out as admitted to practice law in Maryland, in violation of MLRPC 7.5). Lastly, Respondent agreed to represent Mr. Peace *pro bono*, whereas both Mr. Barneys and Ms. Harris-Smith were deriving income from their unauthorized practice. *Cf. Harper*, 356 Md. at 70, 737 A.2d at 566 (imposing disbarment where Mr. Harper's unauthorized practice was motivated by greed); *Lawson*, 401 Md. at 585, 933 A.2d at 871 (noting that one of the mitigating factors this Court considers in imposing a sanction is the "absence of a dishonest or selfish motive[.]").

Notwithstanding the limited nature of Respondent's unauthorized practice of law, Respondent's misconduct is also similar to *Barneys*, and more severe than *Harris-Smith* in

- 19 -

several regards. Like *Barneys*, Respondent deliberately and willfully violated MLRPC 5.5(a) by appearing on behalf of a client in the District Court. *See Barneys*, 370 Md. at 592, 805 A.2d at 1054 (noting that we have imposed disbarment where the attorney "undertook actual representation of clients in Maryland state court matters."). Furthermore, contrary to *Harris-Smith*, there was no "federal overlay" indicating that Respondent reasonably believed he was authorized to practice law in Maryland. *See Harris-Smith*, 356 Md. at 91, 737 A.2d at 577 (remarking that the cases where we have imposed disbarment involved "purely a territorial issue, with no federal overlay"). Lastly, like *Barneys*, Respondent was dishonest with Bar Counsel and the District Court, and committed a misdemeanor offense that reflected adversely on his honesty. MLRPC 8.1(a) and 8.4(b) and (c); *see* Bus. Occ. & Prof. §§ 10-601 and 10-606 (making the unauthorized practice of law a misdemeanor offense); *Barneys*, 370 Md. at 592, 805 A.2d at 1054 (commenting on the relevance of an attendant MLRPC 8.4 violation).

Had Respondent engaged in an ongoing pattern of dishonest conduct like Mr. Barneys, this Court would be inclined to impose disbarment or indefinite suspension, as requested by Bar Counsel. *See Barneys*, 370 Md. at 591, 805 A.3d at 1054 (noting that disbarment is appropriate where "the attorney repeatedly engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation.") (citation omitted); *Attorney Grievance Comm'n of Maryland v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001) ("[I]ntentional[ly] dishonest conduct is closely entwined with the most important matters of basic character[.]"). However, the isolated nature of Respondent's unauthorized practice, and the *pro bono* nature of his representation, does not warrant such a sanction.

Instead, a 60 day suspension from the practice of law will deter Respondent and other non-Maryland attorneys from practicing law in Maryland courts without authorization, notwithstanding that such representation was on a limited, *pro bono*, basis. *See Attorney Grievance Comm'n v. Thomas*, 440 Md. 523, 556, 103 A.3d 629, 648 (2014) (noting that "the chief purpose of the sanction is to protect the public.").

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MD. RULE 16-761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST LARRY D. HUNT.**